LANPHEAR v ANTWERP TOWNSHIP

1. ZONING—ORDINANCES—TOWNSHIP BOARD—RESIDENCY.

A township board which passed an ordinance zoning property in the unincorporated area of the township even though three of the four members of the board present and voting for the ordinance resided in incorporated villages outside the unincorporated areas did not deprive plaintiffs who challenged the ordinance of any of their constitutional or statutory rights because nothing prevents qualified electors from any part of a township from running for any township office (MCLA 168.342).

2. ZONING—ORDINANCES—TOWNSHIP BOARD—STATUTORY PLAN.

The statutory provision which requires a township zoning ordinance to be based upon a plan designed to promote the public health, safety, morals, and general welfare does not require that the "plan" be written or be anything beyond a generalized conception by the members of the township board as to how the districts in the township shall be used (MCLA 125.273).

3. ZONING—STATUTES—TOWNSHIP PLANNING ACT—PLANNING COMMISSION—ZONING BOARD.

The township planning act gives a township board the option to transfer all powers of a township zoning board to a township planning commission created pursuant to the act and requires a township board to postpone for one year the transfer of the zoning board's powers if the latter is nearing completion of its zoning plans; therefore, plaintiffs challenging the validity of a zoning ordinance on the basis that only the planning commission and not the zoning board had power to hold hearings and make zoning change recommendations to the township board

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 58 Am Jur, Zoning §§ 6, 8.
[2] 58 Am Jur, Zoning § 26.
[4] 58 Am Jur, Zoning § 217.
[5] 54 Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps §§ 3, 7, 13, 14.
[6, 7] 58 Am Jur, Zoning § 176.
[8–10] 16 Am Jur 2d, Constitutional Law §§ 335, 485–493.
[11] 58 Am Jur, Zoning § 219.

failed in their proofs where it was neither shown that the township board had transferred the zoning board's powers, nor demonstrated whether the one-year postponement was or was not in effect (MCLA 125.331).

4. ZONING—ORDINANCES—PRESUMPTION OF VALIDITY—APPEAL AND ERROR.

A zoning ordinance comes to the Court of Appeals clothed with every presumption of validity, and it is the burden of the party attacking the ordinance to prove affirmatively that the ordinance is arbitrary and unreasonable.

5. ZONING—ORDINANCES—MOBILE HOME PARKS—ARBITRARINESS—APPEAL AND ERROR.

The Court of Appeals is unwilling to second guess a township board's legislative determination that allowing a new mobile home park in the unincorporated portion of the township would serve the general welfare of the community where the plaintiffs challenging the ordinance alleged that the rezoning action of the township board was arbitrary and capricious but introduced no real evidence to substantiate this allegation, and where there was testimony by a member of the township board that except for one 500-foot strip with one mobile home on it, there were no mobile home zones in the unincorporated area of the township.

6. ZONING—PUBLIC HEARING—NOTICE—TOWNSHIP BOARD—ZONING BOARD—DUE PROCESS.

A statute which requires two notice publications in a local newspaper for meetings of a township *zoning* board does not apply to public hearings held by a township board and does not mean that two such notice publications are a constitutional requirement; as long as the notice is reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections, constitutional requirements of due process are met (MCLA 125.279).

7. ZONING—PUBLIC HEARING—TOWNSHIP BOARD—NOTICE—DUE PROCESS.

Publication in a local newspaper of notice of a public hearing to be held by a township board prior to enactment of a zoning ordinance coupled with notice to the attorney for the plaintiffs challenging the ordinance was adequate to satisfy the constitutional requirements of due process.

8. CONSTITUTIONAL LAW—EQUAL PROTECTION—STATUTES—DISCRIMI-
   NATION.

Statutes which discriminate between certain classes, when the classes are not suspect ones such as race or sex, do not make the discrimination arbitrary or unreasonable if it is founded on a reasonable distinction.

9. CONSTITUTIONAL LAW—EQUAL PROTECTION—BUILDING CODES—MO-
   BILE HOMES.

Equal protection of the law is not denied to landowners subjected to varying building code restrictions if the restrictions are rationally based, and there is nothing in the Michigan Constitution which prohibits the diverse classification of mobile home versus "permanent" residences for building code purposes as long as the classification is reasonably based (Const 1963, art 1, § 2).

10. CONSTITUTIONAL LAW—EQUAL PROTECTION—LEGISLATIVE CLASSIFI-
    CATION—ARBITRARINESS—BURDEN OF PROOF.

A party who assails a legislative classification as unconstitutionally discriminatory and a denial of equal protection of the laws carries the burden of showing that the classification is arbitrary.

11. ZONING—TOWNSHIP ZONING BOARD—QUORUM—PUBLIC HEARING—
    STATUTES.

A recommendation of a township zoning board was not invalid even though only three members of the zoning board were present at a public hearing held on the zoning change request and only two of those members voted for the rezoning where four of the five members of the zoning board voted to rezone; the statutory scheme does not require any set quorum for a public meeting of a township zoning board and a quorum for a meeting was satisfied by a simple majority (MCLA 125.275).

Appeal from Van Buren, Robert E. A. Boyle, J. Submitted Division 3 October 4, 1973, at Grand Rapids. (Docket No. 15682.) Decided November 29, 1973.

Complaint by Carol Lanphear and others against Antwerp Township and others for injunctive relief to prevent the township from rezoning certain property and to prevent the placing of mobile

homes on certain property. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Morris, Culver & Hunter, P. C.,* for plaintiffs.

*Wickett, Erickson, Beach, Burnham & Green,* for defendants.

Before: HOLBROOK, P. J., and BASHARA and O'HARA,* JJ.

HOLBROOK, P. J. Plaintiffs, neighboring residents of the defendant Tylers, sought an injunction against the defendant township to prevent it from rezoning the Tyler property so that it could be used as a mobile home park, and sought an injunction to prevent the Tylers or their grantees from placing mobile homes on the Tyler land. The trial judge denied the requested relief and plaintiffs appeal raising essentially six issues.

I

Could the Antwerp Township board validly pass an ordinance zoning the Tyler property when the property was in the unincorporated area of the township and three of the four members of the board present and voting for the zoning change resided in incorporated villages outside the unincorporated areas?

MCLA 41.102; MSA 5.151 gives "[e]ach inhabitant of any township, having the qualifications of an elector, * * * a right to vote on all matters and questions before any township meeting". A qualified elector need only be a resident of the township for 30 days, and meet other Michigan constitu-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tional requirements to vote. MCLA 168.10; MSA 6.1010; Const 1963, art 2, § 1. MCLA 41.70; MSA 5.62 describes the membership of the township board, and provides that the township board shall consist of officers elected *generally* from the entire township. MCLA 168.342; MSA 6.1342 states that only qualified electors of the township are eligible to be elected to the township board. On the other hand, the township zoning board, which makes zoning change recommendations to the township board, must take at least two-thirds of its membership from unincorporated areas of the township. MCLA 125.274; MSA 5.2963(4). More importantly, MCLA 125.282; MSA 5.2963(12) provides the inhabitants of unincorporated areas the final say whether to accept or reject a proposed zoning ordinance for unincorporated township lands.[1]

In essence, resident electors of unincorporated portions of the township are secured a powerful voice in the zoning of the areas they live in. Moreover, the township board, which appoints the township zoning board, could conceivably be made up entirely of residents of unincorporated portions of the township, since nothing prevents qualified electors from *any* part of the township from run-

---

[1] The statute reads:

"Within 30 days following the passage by the township board or its rejection of such zoning ordinance, *a petition signed by 15% of the persons residing in and owning property assessed for taxes located in the unincorporated portion of the township* may be filed with the township clerk praying therein for the submission of such ordinance to the electors residing in the unincorporated portion of the township for their approval or rejection. Upon the filing of such petition, any ordinance passed by the township board *shall not be invalidated until the same shall have been rejected by a majority of the persons residing in and owning property assessed for taxes located in the unincorporated portion of the township voting thereon* at the next regular election which supplies reasonable time for proper notices and printing of ballots, or at any special election called for that purpose. The township board shall provide the manner of submitting any ordinance to the voters for their approval or rejection, and determining the result thereof." (Emphasis supplied.)

ning for *any* township office. Simply because three of the four members of the township board, which authorized the change of the zoning ordinance in issue here, perchance happened to live in the incorporated areas of the township did not deprive plaintiffs of any of their constitutional or statutory rights.

II

Was the action of the Antwerp Township board invalid because it was not according to a statutory plan, was not in compliance with the township planning act, and was "spot zoning"?

There are really three parts to this issue. First, the objection is made that the record fails to show any attempt by the township to zone according to a plan as is required by the township rural zoning act, 1943 PA 184, specifically MCLA 125.273; MSA 5.2963(3), which reads in pertinent part: "The provisions of the zoning ordinance *shall be based upon a plan* designed to promote the public health, safety, morals and general welfare". (Emphasis supplied.) The trial judge correctly pointed out that there is no requirement in 1943 PA 184 that the "plan" be written or be anything beyond "a generalized conception by the members of the board as to how the districts in the township shall be * * * used". This "generalized conception" is exhibited in the zoning ordinance itself, since the document zones districts, prescribes variances, land uses, etc., for the entire township, and thus plans the township's future development.

However, plaintiffs do not see the requirement for a "plan" only in the township rural zoning act (MCLA 125.273; MSA 5.2963[3] quoted above), but also in the township planning act (MCLA 125.321

*et seq.;* MSA 5.2963[101] *(et seq.).* Thus arises the
second part of this issue, *i.e.,* whether the provi-
sions of the township planning act were complied
with. Plaintiffs claim in their brief that pursuant
.to the township planning act the township board
on April 14, 1970, created a planning commission
and thereafter only it had the power to hold
hearings and make zoning change recommenda-
tions to the township board, and these recommen-
dations could not be made except on the basis of a
written plan prescribed by the township planning
act, which plan did not exist at the time of the
zoning change in issue here. Even assuming a
planning commission had in fact been created on
April 14, 1970, MCLA 125.331; MSA 5.2963(111)
gives the township board the *option* to transfer all
powers of the township zoning board to the plan-
ning commission. In .addition, under this statute
the township board must postpone for one year the
transfer of the zoning board's powers if the latter
is nearing the completion of its zoning plan. Plain-
tiffs have not shown that the township board has
transferred the zoning board's powers, or demon-
strated whether the one-year postponement was or
was not in effect. This failure of proof precludes a
favorable ruling in plaintiffs's behalf on this ques-
tion.

The third part of the issue is whether the rezon-
ing of the Tyler land constituted "spot zoning".
The basic reviewing standard is that normally a
zoning ordinance comes to this Court clothed with
every presumption of validity, and it is the burden
of the party attacking the ordinance to prove
affirmatively that the ordinance is arbitrary and
unreasonable. *Midland Twp v Rapanos,* 41 Mich
App 75; 199 NW2d 548 (1972). "Spot zoning" has
most recently been defined in *SBS Builders, Inc v*

*Madison Heights,* 389 Mich 323, 327; 206 NW2d 437, 438 (1973):

" 'A zoning ordinance or amendment of the present type creating a small zone of inconsistent use within a larger zone is commonly designated as "spot zoning". [Citations ommitted.] Such an ordinance is closely scrutinized by a court and sustained only when the facts and circumstances indicate a valid exercise of the zoning power.' *Penning v Owens,* 340 Mich 355, 367; 65 NW2d 831, 836 (1954)."

While the plaintiffs alleged in their complaint that the rezoning action of the township board was arbitrary and capricious, plaintiffs introduced no real evidence to substantiate this allegation. On the other hand, there was testimony by a member of the township board that except for one 500-foot strip with one mobile home on it, there were no mobile home zones in the unincorporated area of the township. We are unwilling to second guess the township board's legislative determination that allowing a new mobile home park in the unincorporated portion of the township would serve the general welfare of the community, at least not without countervailing evidence of arbitrary action by any of the township legislative bodies.

### III

Was the rezoning of the Tyler property invalid because no public hearing was held as provided by the statute?

MCLA 125.284; MSA 5.2963(14) requires that a public hearing, when requested in writing by a property owner, shall be conducted by the township board prior to amendments to the zoning

ordinance. This statute was enacted as part of 1943 PA 184. Plaintiffs have stipulated on appeal:

"21. That a request for hearing on Ordinance No. 17 was duly served upon the township on or about July 15, 1970 pursuant to 1943 PA 184, as appears in the ordinance book.

"22. That a hearing was held in answer to that request Wednesday, August 26, 1970.

"23. That there was no notice of hearing published or posted or served personally or by mailing of any notice of hearing of the meeting of the township board on August 26, 1970 on Ordinance No. 17, except a letter to William H. Culver and a notice published in the Courier Leader August 21, 1970, which said there would be a special meeting of the Antwerp Township board on August 26, 1970, at 8 p.m."

Plaintiffs cannot stipulate on appeal that a hearing was held and then claim in their appellate brief that a hearing was not held.

Plaintiffs' further objection that inadequate notice was given prior to the township board's public hearing is without merit. Plaintiffs assert that MCLA 125.279; MSA 5.2963(9) requires that notice of the hearing shall be given by two publications in a newspaper of general circulation in the township, but fail to note that this statute applies to hearings held by the township *zoning* board, not the township board. 1943 PA 184 does not speicfically indicate what the notice requirements are for a public hearing held by the township board. Clearly, some notice is required. *Lake Twp v Sytsma,* 21 Mich App 210; 175 NW2d 337 (1970). However, simply because two notice publications in a local newspaper are required for meetings of the township zoning board does not mean that two notice publications are a constitutional requirement. As long as the notice is reasonably calcu-

lated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections, constitutional requirements of due process are met. *Robinson v Hanrahan,* 409 US 38; 93 S Ct 30; 34 L Ed 2d 47 (1972). While publication might under some circumstances not be sufficient for due process purposes, since here publication was coupled with notice to plaintiffs' attorney, this Court deems it constitutionally adequate. See *Brown v Shelby Twp,* 360 Mich 299; 103 NW2d 612 (1960); *cf. Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950).

## IV

Do the mobile homes on the Tyler property violate the township building code or code for mobile homes, and, if not, does the discrimination made between the two codes violate constitutional guarantees of equal protection of the laws?

Plaintiffs argue that once a mobile home becomes immobile, has utilities attached to it, wheels removed, etc., it is like any other home in the township and therefore must meet the township's building code applicable to permanent residences. The township has adopted a separate building code for mobile homes, which allows, for example, the ceiling in a mobile home to be a minimum of seven feet high, as opposed to the seven feet six inch minimum required of "permanent" residences by the residence building code.

We find no merit to this issue. Townships have long had the power to devise their own building codes for unincorporated portions of the township. See 1943 PA 185 (MCLA 125.351 *et seq.;* MSA 5.2973[1] *et seq.).* 1943 PA 185 was repealed and

replaced by the State Construction Code Act of 1972, 1972 PA 230 (MCLA 125.1501 *et seq.;* MSA 5.2949[1] *et seq.,* effective January 1, 1973). Pursuant to 1972 PA 230, a new statewide construction code is to be promulgated no later than January 1, 1974. MCLA 125.1504; MSA 5.2949(4). The new act specifically deals with mobile homes, requiring that:

"The standards for premanufactured housing shall be no less than the standards required for non-premanufactured housing except that mobile homes shall be deemed to have complied with this requirement by compliance with the state code provisions adopting a nationally recognized mobile home code." MCLA 125.1508; MSA 5.2949(8).

Other provisions dealing with mobile homes in the new act are MCLA 125.1502 to 125.1519; MSA 5.2949(2) to 5.2949(19). The new act also provides that until six months after the new state code is promulgated "construction regulations heretofore or hereafter adopted by a county, city, village or township continue in effect". MCLA 125.1524; MSA 5.2949(24). Rights acquired under existing construction regulations are saved as long as the regulations remain in effect. MCLA 125.1530; MSA 5.2949(30). The new act, therefore, represents in part a legislative recognition of the past power of townships to devise their own building codes according to the conditions and character of the township.

The new act also recognizes, through MCLA 125.1508; MSA 5.2949(8) and MCLA 125.1519; MSA 5.2949(19), that mobile homes are of a different character than "permanent" residences and therefore may be subject to different building codes. Plaintiffs object that treating "immobilized" mobile homes and "permanent" residences differ-

ently under varying building codes violates constitutional guarantees of equal protection of the laws. We disagree. Simply because statutes discriminate between certain classes, when the classes are not suspect ones such as race or sex, does not make the discrimination arbitrary or unreasonable if it is founded on a reasonable distinction. *Dandridge v Williams,* 397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970). The Supreme Court of the United States has rejected the argument that equal protection of the laws is denied to landowners subjected to varying building code restrictions if the restrictions are rationally based. See, *e.g., Welch v Swasey,* 214 US 91; 29 S Ct 567; 53 L Ed 923 (1909); *Gorieb v Fox,* 274 US 603; 47 S Ct 675; 71 L Ed 1228 (1927). We also find nothing in Const 1963, art 1, § 2 that prohibits the diverse classification of mobile homes versus "permanent" residences for building code purposes, as long as the classification is reasonably based. *Pusquilian v Cedar Point, Inc,* 41 Mich App 399; 200 NW2d 489 (1972). In any case, the party who assails the classification carries the burden of showing that it is arbitrary, a burden not carried by plaintiffs here. *McDaniel v Campbell, Wyant & Cannon Foundry,* 367 Mich 356; 116 NW2d 835 (1962), *cert den,* 371 US 968; 83 S Ct 551; 9 L Ed 2d 538 (1963).

V

Did the public notices given for the proceedings before the zoning board and township board satisfy the constitutional requirements for notice?

We have previously discussed the issue of whether notice was sufficient for the meeting of the township board. As for adequate notice preceding the township zoning board meeting, plaintiffs claim that lack of personal notice to adjoining

landowners of the rezoned property violated due process requirements. While the amended version of MCLA 125.284; MSA 5.2963(14) now requires notice to adjoining landowners, the statute in effect at the time of the township zoning board hearing did not require such notice. To repeat, notice is adequate if reasonably calculated, under the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to be heard. *Robinson, supra.* The cases plaintiffs cite for the proposition that notice by publication is insufficient where the names and post office addresses of those affected are available are not on point, since they concerned "interested parties" who also happened to be either plaintiffs or defendants in judicial, not legislative, proceedings. *Mullane, supra; Ridenour v Bay County,* 366 Mich 225; 114 NW2d 172 (1962). We find no constitutional inadequacy in the notice given here.

## VI

Was the recommendation of the township zoning board invalid because only two of the three members present at the hearing actually voted for the rezoning?

Only three members of the township zoning board were present at the public hearing held on the zoning change request, July 16, 1970. At the July 21, 1970 meeting of the township zoning board, four of five members of the board voted to recommend the rezoning of the property, but only two of those four had been at the public hearing held July 16, 1970. Plaintiffs claim, therefore, that no public hearing was held as is required by MCLA 125.275; MSA 5.2963(5).

We find this contention without merit. The statutory scheme does not require any set quorum for

a public meeting of the township zoning board. A quorum for a meeting of the township boards is a simple majority, however, and we see no reason for a higher requirement for a meeting of the township zoning board, absent some statute to the contrary. MCLA 41.70; MSA 5.62. We note that a majority of the membership of the township zoning board was present at the public hearing held July 16, 1970.

Affirmed. No costs, a public question being involved.

All concurred.