Michael R. BELL, Susan B. Bell, Arden O. Brabazan, Arthur R. Channing, Ruth M. Channing, Robert V. Conover, Jane A. Conover, Steven H. Hay, Michael W. Mooney, Rita L. Mooney, Frank E. Nappe, Mary E. Nappe, William V. Osborne, Karen K. Osborne, Richard H. Pfeil, Richard E. Radtke and Mary K. Radtke, Plaintiffs-Appellants,

v.

CITY OF ELKHORN and Hardees C & S Foods, Inc., Defendants-Respondents.

Supreme Court

*No. 84–327. Argued January 30, 1985.—Decided February 27, 1985.*

(Also reported in 364 N.W.2d 144.)

For the plaintiffs-appellants there were briefs by *Lisle W. Blackbourn* and *Godfrey, Pfeil & Neshek, S.C.*, Elkhorn, and oral argument by *Robert Conover*, Elkhorn.

For the defendants-respondents there was a joint brief by *Rodney A. Thorson* and *Thorson, Davies, Johnson & Shortenhaus*, and *William L. Seymour* and *Seymour, Kremer & Nommensen*, all of Elkhorn, and oral argument by *Rodney A. Thorson* and *William L. Seymour*.

Amicus curiae briefs were filed by *Le Roy A. Lokken* and *James H. Schneider*, Madison, for the League of Wisconsin Municipalities; and by *Richard A. Lehmann* and *Amy L. Wachs*, Middleton, for the Wisconsin Chapter of the American Planning Association.

WILLIAM G. CALLOW, J.   This is an appeal from a judgment of the circuit court for Walworth county denying plaintiffs' request for a declaratory judgment and

upholding a city of Elkhorn (City) amendatory zoning ordinance. The appeal was certified by the court of appeals and accepted by this court pursuant to sec. (Rule) 809.61, Stats. We affirm the circuit court.

The issues presented on appeal are whether the existence of a formal comprehensive plan is a condition precedent to the adoption of a valid zoning ordinance; whether Elkhorn's rezoning of certain property constituted illegal spot zoning; and whether the commercial-shopping district portion of Elkhorn's zoning ordinance is unconstitutional for failure to limit the City's legislative discretion.

This action arises out of the city of Elkhorn's approval of an application to rezone two parcels of land from multiple family use to commercial-shopping use. The subject property is located at the southeast corner of the intersection of East Geneva and South Lincoln Streets in Elkhorn. In 1972, Elkhorn enacted zoning ordinance No. 426, which divided the city into districts and provided certain regulations with regard to the use of property in those districts. Prior to the rezoning amendment which is the subject of this action, three corners of the intersection of East Geneva and South Lincoln Streets were zoned B-3, commercial-shopping district. The southeast corner, where the subject property is located, was zoned R-4, multi-family residential district. At the time this action was commenced, a gas station, muffler shop, and pizza parlor were located on the corners which were zoned B-3. Two residences were located on the subject property.

In October, 1982, the defendant, Hardees C & S Foods, Inc., applied to the Elkhorn common council to have the property at the southeast corner of the East Geneva and South Lincoln Street intersection rezoned from R-4 to B-3. Hardees intended to build a restaurant on the site. The city clerk-treasurer gave notice of a public hearing to be held before a joint meeting of the common council

and the city plan commission on the proposed amendment to Elkhorn's zoning law, pursuant to sec. 62.23(7)(d)2, Stats. The plaintiffs, who are owners of more than twenty percent of the property located within 100 feet of the subject premises, filed a protest petition in opposition to the proposed rezone. The effect of the protest petition was that a three-fourths vote of the city council was required to pass the amendatory zoning ordinance.[1]

A public hearing was held on November 1, 1982, and the city plan commission recommended to the common council that the petition to rezone be approved. On November 15, 1982, the council passed the amendment to the zoning ordinance, which changed the zoning of the subject property from R-4 to B-3, by a five to one vote. The amendatory zoning ordinance was published and became effective on December 23, 1982. A building permit was issued to Hardees on December 27, 1982, and the restaurant opened on April 19, 1983.

On December 13, 1982, the plaintiffs filed a declaratory judgment action challenging the City's passage of the amendatory zoning ordinance. An amended summons and complaint were filed on April 26, 1983. The plaintiffs' attack on the City's action was threefold. First, plaintiffs contended that Elkhorn's zoning ordinances were invalid because Elkhorn has not adopted a comprehensive plan. Second, plaintiffs charged that the rezone amendment amounted to spot zoning. Finally, plaintiffs contended that the portion of Elkhorn's original zoning ordinance

[1] Sec. 62.23(7)(d)2, Stats., provides, in relevant part: "In case of a protest against such (rezone) amendment, duly signed and acknowledged by the owners of 20% or more either of the areas of the land included in such proposed amendment, or by the owners of 20% or more of the area of the land immediately adjacent extending 100 feet therefrom, or by the owners of 20% or more of the land directly opposite thereto extending 100 feet from the street frontage of such opposite land, such amendment shall not become effective except by the favorable vote of three-fourths of the members of the council voting on the proposed change."

establishing B–3 commercial-shopping districts was unconstitutional because it lacked proper standards.

The matter was tried to the court in July, 1983. On December 20, 1983, the court issued its memorandum decision denying plaintiffs' request for a declaratory judgment. The court found that a formal comprehensive plan is not a condition precedent to the enactment of a valid zoning ordinance. The court also found that the rezone of the property did not constitute spot zoning. Finally, the court upheld the constitutionality of Elkhorn's original zoning ordinance and rejected plaintiffs' argument that the portion of the ordinance establishing B–3 districts lacked proper standards. A judgment was entered on January 14, 1984, nunc pro tunc to December 20, 1983. The plaintiffs filed a notice of appeal on February 13, 1984. We accepted the certification of the appeal by the court of appeals on January 8, 1985.

The first issue we decide is whether the existence of a formal comprehensive plan is a condition precedent to the adoption of a valid zoning ordinance. To resolve this issue, we must turn to sec. 62.23, Stats., which sets forth Wisconsin's statutory scheme for city planning. Section 62.23(1) provides that a city may create a city plan commission. Section 62.23(2), Stats. states:

"It shall be the function and duty of the commission to make and adopt a master plan for the physical development of the municipality. . . . The master plan, with the accompanying maps, plats, charts and descriptive and explanatory matter, shall show the commission's recommendations for such physical development, *and may include . . . a comprehensive zoning plan."* (Emphasis added.)

Section 62.23(7)(a) gives the city council the power to enact zoning ordinances "[f]or the purpose of promoting health, safety, morals or the general welfare of the community." Section 62.23(7)(c) requires that "[s]uch (zoning) regulations shall be made in accordance with

a comprehensive plan. . . ." The statutes do not define the term "comprehensive plan," and the parties hold conflicting views as to its meaning. The defendants argue that the requirement of a "comprehensive plan" can be met by the enactment of a comprehensive zoning ordinance itself and that the statute does not require a comprehensive plan to be a separate document. The plaintiffs contend that a zoning ordinance does not qualify as a comprehensive plan and that a separate document must be prepared and adopted before a city may enact a zoning ordinance.

The question of whether a zoning ordinance may constitute a comprehensive plan is a matter of first impression in Wisconsin. While we noted in *Town of Sun Prairie v. Storms,* 110 Wis. 2d 58, 327 N.W.2d 642 (1983) that "[z]oning covers the immediate use of land, while planning restricts transferability and future use," 110 Wis. 2d at 68, citing E.C. Yokley, *Law of Subdivisions,* sec. 39 at 157–58 (2d ed. 1981), we have never before been called upon to decide whether a zoning ordinance may qualify as a comprehensive plan under sec. 62.23 (7) (c), Stats.

Commentators have defined a comprehensive plan as a guide to community development. 3 R. Anderson, *American Law of Zoning,* sec. 21.15 at 609 (2d ed. 1977). It is "a general plan to control and direct the use and development of property in a municipality, or a large part thereof, by dividing it into districts according to the present and potential use of the property." 1 E.C. Yokley, *Zoning Law and Practice,* sec. 5–3 at 218 (4th ed. 1978).[2] The

---

[2] In *Heaney v. Oshkosh,* 47 Wis. 2d 303, 309, 177 N.W.2d 74 (1970), we noted that a comprehensive zoning plan is generally defined in 8 McQuillin, *Municipal Corporations* (3d ed., 1965 rev.), pp. 211, 212, sec. 25.79 as a plan "which controls the use of land and buildings throughout the entire territory of the municipality

objectives sought to be achieved through the development of a comprehensive plan include: (1) improving the physical environment of the community; (2) promoting the public interest; (3) facilitating the implementation of community policies on physical development; (4) effecting political and technical coordination in community development; (5) injecting long-range considerations into the determination of short-range actions; and (6) bringing professional and technical knowledge to bear on the making of political decisions concerning the physical development of the community. 3 R. Anderson, *supra,* sec. 21.04 at 591–92.

The requirement contained in many states' zoning statutes that zoning must be "in accordance with a comprehensive plan" originated in the Standard Zoning Enabling Act. An explanatory note to this section of the Act stated, "This will prevent haphazard or piecemeal zoning. No zoning should be done without such a comprehensive study." C. Haar, *In Accordance With a Comprehensive Plan,* 68 Harv. L. Rev. 1154, 1170 (1955). *See also* D. Mandelker, *Land Use Law,* sec. 3.14 at 57 (1982). ("Commentary to the Standard Zoning Act suggests . . . that the draftsmen meant only that zoning be done comprehensively and not in a piecemeal manner.")

The majority view held by courts and commentators that have considered the issue is that a zoning ordinance itself may satisfy the requirement that zoning be in accordance with a comprehensive plan. In *Lanphear v. Antwerp Township,* 50 Mich. App. 641, 646, 214 N.W.2d 66 (Mich. Ct. App. 1973), the court rejected the view that the plan must be embodied in a separate document.

". . . [T]here is no requirement in (the statute) that the 'plan' be written or be anything beyond 'a general-

by dividing the territory into use districts permanent in character according to present and probable future conditions."

ized conception by the members of the board as to how the districts in the township shall be . . . used'. This 'generalized conception' is exhibited in the zoning ordinance itself, since the document zones districts, prescribes variances, land uses, etc., for the entire township, and thus plans the township's future development."

1 E.C. Yokley, *supra,* sec. 5–3 at 220 states, "It has been said that a comprehensive plan is ordinarily separate and distinct from an ordinance, but that it is possible for an ordinance in and of itself to be a comprehensive plan, unless the legislature or the legislative body clearly otherwise provides." D. Mandelker, *supra,* sec. 3.14 at 57 states in this regard, "[C]ourts can find the 'comprehensive plan' contemplated by the Act in the provisions of the zoning ordinance and . . . an adopted comprehensive plan is not necessary."

Several courts have held that planning legislation requires the preparation and adoption of a separate comprehensive plan document and that the adoption of a formal comprehensive plan is a condition precedent to the enactment of a zoning ordinance. *See, e.g., Fasano v. Washington Co. Comm.,* 264 Or. 574, 507 P.2d 23 (1973); *Village of McGrew v. Steidley,* 208 Neb. 726, 305 N.W.2d 627 (1981); *Love v. Board of Cty. Com'rs of Bingham,* 105 Idaho 558, 671 P.2d 471 (1983). However, none of those cases involved the interpretation of a statute containing the language that ordinances must be "in accordance with a comprehensive plan."

We find the majority view to be persuasive on this issue. While sec. 62.23(7)(c) requires that zoning regulations be made "in accordance with a comprehensive plan," the statute contains no requirement that a comprehensive plan must be a formal document separate from the zoning ordinance nor does it require that a comprehensive plan be adopted prior to the enactment of a zoning ordinance. The purpose of a comprehensive

plan is to provide an orderly method of land use regulation for the community. That purpose can be accomplished by the zoning ordinance itself without the need of a separate document labeled "Comprehensive Plan." The clear intent of the legislature in enacting sec. 62.23, Stats., was to have cities design a general plan to control the use of property in the community. This can be accomplished with or without the advice of a plan commission because the creation of a plan commission is at the discretion of the governing body of the community. *See* sec. 62.23(1)(a). The power to zone is exclusively vested in the city council. *See* sec. 62.23(7)(a).

Elkhorn's zoning ordinance divided the city into eleven districts and provided certain restrictions for the use of property in each district. It set forth regulations regarding nonconforming and conditional uses. It provided a procedure for changes and amendments to the ordinance. It established a board of appeals and specified its powers. Elkhorn's zoning ordinance serves as a general plan to control and direct the use and development of property in the city and serves as a guide to future community development. As such, we hold that the ordinance itself is a comprehensive plan as required by sec. 62.23(7)(c), Stats. No separate comprehensive plan document need be adopted by a city as a condition precedent to enacting a zoning ordinance.

The next issue we decide is whether Elkhorn's adoption of the amendatory zoning ordinance constituted spot zoning. Spot zoning has been defined as "the practice whereby a single lot or area is granted privileges which are not granted or extended to other land in the vicinity in the same use district." *Howard v. Village of Elm Grove,* 80 Wis. 2d 33, 41, 257 N.W.2d 850 (1977); *Cushman v. Racine,* 39 Wis. 2d 303, 306–07, 159 N.W.2d 67 (1968). This court has previously held that such zoning

is not illegal per se because it is not necessarily inconsistent with the purposes for which zoning ordinances can be passed according to sec. 62.23(7), Stats. However, rezoning should be consistent with long-range planning and be based upon considerations which affect the whole community. *Id.* at 307. Spot zoning "should only be indulged in where it is in the public interest and not solely for the benefit of the property owner who requests rezoning." *Id.* at 309, citing *Buhler v. Racine,* 33 Wis. 2d 137, 150–51, 146 N.W.2d 403 (1966).

We do not believe the facts of this case support a finding that the amendatory zoning ordinance constituted spot zoning. Three corners of the intersection where the subject property was located were zoned commercial at the time Hardees applied for rezoning. Those lots which were already zoned commercial contained a gas station, pizza parlor, and muffler shop. This was not a case of a single commercial use encroaching on a strictly residential area. Testimony was presented at trial that single family residential use in the area was deteriorating. The amendatory zoning ordinance did not grant special privileges to a single parcel inconsistent with the use of property in the general area. Thus, we hold that the rezoning of Hardees' property was not spot zoning.

The final issue we decide is whether the B–3 commercial-shopping district portion of Elkhorn's zoning ordinance is unconstitutional for failure to contain adequate standards to limit the city's legislative discretion. The plaintiffs contend that the B–3 section of the ordinance is so broad that it cannot be deemed to contain any limiting rule or standard.

We stated in *State ex rel. American Oil Co. v. Bessent,* 27 Wis. 2d 537, 546, 135 N.W.2d 317 (1965):

"We must start with the premise that a comprehensive zoning ordinance enacted pursuant to sec. 62.23, Stats.,

is presumed to be valid and such ordinance must be liberally construed in favor of a municipality. Consequently, an alleged invalidity of the ordinance must be clearly shown by the party attacking it. (Citations omitted.) It follows as a corollary to the presumption of validity and from the fact that the shaping of zoning districts for land use is primarily a legislative function that when the validity of the ordinance in this respect is fairly debatable it should be upheld and the court should not substitute its judgment for that of the municipality."

A zoning ordinance must be construed as constitutional if the language of the ordinance can be reasonably construed to sustain it. *Id.* at 549. Although a court may differ with the wisdom of zoning, the court cannot substitute its judgment for that of the zoning authority. *Buhler v. Racine County,* 33 Wis. 2d 137, 146–47, 146 N.W.2d 403 (1966).

The B–3 commercial-shopping district portion of the Elkhorn zoning ordinance specifically allows for 37 enumerated uses. It also allows for "any other use" with the exception of ten uses which are specifically prohibited. While the City has admitted that the B–3 section of the ordinance leaves a great deal to be desired in terms of draftsmanship and standards, the plaintiffs have not met their burden of overcoming the presumption of validity which the ordinance enjoys. We find that the validity of the B–3 portion of the ordinance is fairly debatable and, thus, must be upheld.

*By the Court.*—The judgment of the circuit court is affirmed.