**STATE of Missouri ex rel. George A. CHIAVOLA and Conne S. Flott, Respondents,**

v.

**The VILLAGE OF OAKWOOD, Missouri, Willared S. Norton, John W. Grimwade, Morris L. Phillips, L. Homer Orr and J. Jerry Shields, Appellants.**

No. WD 48239.

Missouri Court of Appeals, Western District.

Aug. 9, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied Nov. 22, 1994.

Robert H. Freilich, Stephen J. Moore, Freilich, Leitner & Carlisle, Kansas City, for respondents.

James F. Ralls, Jr., Feldhause & Ralls, P.C., and Sherwin L. Epstein, Sherwin L. Epstein & Associates, Kansas City, for appellants.

Before LOWENSTEIN, P.J., and SPINDEN and BERREY, JJ.

LOWENSTEIN, Presiding Judge.

This appeal stems from a trial court determination that the single zoning ordinance (Ordinance No. 10) of the Village of Oakwood (Oakwood), which allows only single family residential usage in Oakwood: (1) is unconstitutional on due process grounds; and (2) as being infirm because Oakwood failed to develop a comprehensive plan under § 89.040, RSMo 1986. The Appellant, Oakwood, is a small bedroom community located in Clay County, and is a suburb of Kansas City. Oakwood consists of 80 single family dwellings on 80 platted lots.

The Plaintiffs/Respondents (Landowners) filed a multi-count petition. The trial court granted summary judgment on Count I which prayed for a declaration that Ordinance No. 10, and "all zoning ordinances" of Oakwood, were unconstitutional both facially,

and as applied[1] to Landowners and for the municipality's failure to have a separate comprehensive plan. The remaining counts, which prayed for damages under several theories, were not reached since they hinged on the ruling of Count I. Pursuant to Rule 74.01(b) the trial court determined the appealability in its declaration that its ruling was final and appealable. The trial court did not take up Landowners' request for attorney fees in Count I, under 42 U.S.C. § 1988 and under Missouri Declaratory Judgment Act §§ 527.010—.130 RSMo 1986, or in any of the other five counts. Landowners have cross-appealed on this non-ruling of attorney fees. Their cross-appeal will be addressed at the end of this opinion.

At the very heart of this appeal lies the issue of whether a Missouri municipality may enact valid zoning ordinances without having first formally adopted a "comprehensive plan," under § 89.040, which provides that regulations on zoning and districts ". . . shall be made in accordance with a comprehensive plan. . . ."

Summary judgment was granted on the portion of Landowners' petition which sought declaratory relief from Oakwood's only ordinance, Ordinance No. 10, relating to zoning and land use. Ordinance No. 10 was adopted in 1955, shortly after residents of a housing subdivision were incorporated as a village under § 80.020 RSMo 1986. The ordinance limited the use of the 80 lots comprising Oakwood to single-family residential use with a lot size of 30,000 square feet.

Oakwood is now bordered by a major thoroughfare, North Oak Trafficway (North Oak), as well as a portion of Kansas City and other villages in Clay County. North Oak carries approximately 25,000 cars per day and contains many commercial properties in the other municipalities it passes through.

In 1981 the Landowners, Chiavola and Flott purchased a house in Oakwood located on a six acre lot. They sought to rezone the portion of their land which abuts North Oak,

approximately 4.7 acres, for commercial use. Oakwood's zoning commission, and later its trustees, denied the rezoning petition. The circuit court reversed, holding among other reasons; Ordinance No. 10 was invalid because Oakwood had not previously adopted a "comprehensive plan" pursuant to chapter 89, and the ordinance would not suffice as both the zoning "plan" and the zoning ordinance. As a result of the demise of Ordinance No. 10 Oakwood presently has no zoning ordinance on any land within its boundaries.

Ordinance No. 10 was the product of an Oakwood Zoning Commission hearing held in February, 1955, which recommended to the Trustees that the boundaries of Oakwood be zoned as "one residential district." Attached to the Commission's report was a description of the 80 lot plats of Oakwood. The report and subsequent ordinances provided for streets and parks but no commercial areas. This ordinance was passed in March, 1955. Although amendments were made to Ordinance No. 10 in 1966 and 1967, Oakwood has limited the land use to single-family dwellings.

There are two arguments which Oakwood, Appellants, presents as error to this court: 1) Ordinance No. 10 is not facially unconstitutional; and 2) it is not statutorily invalid. The parties, in both their briefs and arguments, seem to confuse the issues of constitutionality and statutory validity. This opinion will first outline the constitutional issues, and then the statutory issue. This court finds Ordinance No. 10 to be both constitutionally and statutorily sound and, therefore, reverses the judgment. Landowners cross-appeal is dismissed.

### Standard of Review

■ Since zoning and refusal to rezone are legislative acts, this court reviews de novo any challenges to their validity. *J.R. Green Properties Inc. v. Bridgeton*, 825 S.W.2d 684, 686 (Mo.App.1992); *Elam v. St.*

---

1. The issue of whether Ordinance No. 10 is unconstitutional as it applied to Chiavola and Flott was not preserved on appeal. Both parties directed their efforts towards the facial unconstitutionality of Ordinance No. 10 and therefore we

focus on that issue. This court finds even had they chosen to assert an as applied argument, the Ordinance was constitutional as it applied to their land.

*Ann,* 784 S.W.2d 330 (Mo.App.1990). This court is to first determine whether or not the legislative judgement was fairly debatable, and if it is, then the decision must stand. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Binger v. Independence,* 588 S.W.2d 481 (Mo. banc 1979). There is a presumption of validity for zoning ordinances; the presumption is rebuttable, but Landowners bear the burden of proving Ordinance No. 10 is unreasonable in order to successfully rebut the presumption. *Elam,* 784 S.W.2d at 335; *Flora Realty & Inv. Co. v. Ladue,* 362 Mo. 1025, 246 S.W.2d 771, 778 (banc 1952). Where there is uncertainty regarding the reasonableness of a zoning regulation, it is to be resolved in the government's favor. *Flora Realty,* 246 S.W.2d at 778.

### I. Constitutional Attack

#### A. Reasonableness

■ The first point on appeal is that the court erroneously held Ordinance No. 10 to be unconstitutional. An ordinance may be either facially unconstitutional or unconstitutional as applied to a particular tract of land. Here it is asserted that on its face, Ordinance No. 10 is unconstitutional. The due process clauses of the Fourteenth Amendment to U.S. Constitution and the Missouri Constitution, Art. 1 § 10, require zoning "to bear a substantial relationship to health, safety, morals or the public welfare." *Flora Realty,* 246 S.W.2d at 778. The constitutional standard is essentially one of reasonableness. *White v. Brentwood,* 799 S.W.2d 890, 892 (Mo.App.1990), (citing *Vatterott v. Florissant,* 462 S.W.2d 711, 713 (Mo.1971)). Zoning may be unreasonable on its face or as applied to a particular tract of land. In Missouri, courts not only "determine whether application of the zoning is substantially related to the alleged purpose of the zoning, but also the private detriment caused by such application." *Elam v. St. Ann,* 784 S.W.2d at 334. Therefore, even where the zoning is related to the public welfare, the zoning may be considered unconstitutional where it demonstrates a detriment to private interests which outweighs the public benefit from retaining it. *Id.* at 334–335.

What is reasonable depends on the requirements of the locality, for what might be reasonable in one place may be unreasonable in another. *Flora Realty,* 246 S.W.2d at 778. The fact that economic loss will be sustained if the ordinance is upheld is not controlling; nor does the fact that neighboring or adjoining land is less restrictively zoned establish that the regulation is arbitrary or unfairly discriminatory. *Id.* at 779.

■ Here the zoning regulation, calling for single-family residential use, is facially reasonable. The general plan, as it can be inferred from Ordinance No. 10, its amendments via subsequent ordinances, and the development of Oakwood, was to establish a small bedroom community consisting of 80 homes. The ordinance provided for the single-family homes, churches and community buildings, public parks, and accessory uses customarily incident to the other allowable uses not involving the conduct of business or industry. This court can not say the zoning ordinance does not bear a substantial relationship to public health, safety, morals or general welfare and, therefore, is unreasonable or, that the detriment to Landowners outweighs the public benefits.

#### B. Comprehensive Single Use Zoning

■ The judgment also infers the ordinance is facially unconstitutional because it provides for only one type of zoning ... single-family residential. *McDermott v. Calverton Park,* 454 S.W.2d 577 (Mo. banc 1970), controls on this issue. The Court in *Calverton Park* overruled a portion of its earlier ruling in *Moline Acres v. Heidbreder,* 367 S.W.2d 568 (Mo.1963), which held a municipality could not adopt a single-use zoning ordinance.

In *Moline Acres,* the city was incorporated as a village and adopted a single-use zoning ordinance. The Court held the Missouri statutes were "never intended ... to give to a municipality the power to adopt a *one use district* zoning ordinance encompassing the whole town." *Id.* at 573. Thus, the Court found the village lacked the authority to enact such an ordinance. *Id.*

The Supreme Court of Missouri, in *Calverton Park* specifically overruled the quoted portion of *Moline Acres* saying, "We have read and reread the applicable statutes and find nothing therein to indicate a legislative intent that, *under all circumstances*, a municipality must provide for more than one use in its zoning ordinance." *Calverton Park*, 454 S.W.2d at 577. This is especially true for small bedroom communities situated in large metropolitan areas. *Id.* at 581. In *Calverton Park*, the village consisted of approximately 1700 residents and was situated between the cities of Florissant and Ferguson in the St. Louis area. *Id.* at 579. Due to its location, there was an abundance of commercial facilities located within a short distance from the village. *Id.* at 580. The ordinance in question allowed for public buildings, parks, golf courses and four zoning districts, all of which were restricted to single-family residential use. *Id.* at 579.

*Clarkson Valley Estates Inc. v. Clarkson Valley*, 630 S.W.2d 151 (Mo.App.1982) further supports the proposition that single-use zoning is legally permissible. In *Clarkson Valley*, the court held single-family residential zoning for the entire village was "legally permissible and factually justified given the nature of the community involved." *Id.* at 153. The Village of Clarkson Valley was incorporated in 1952 and zoned primarily as single-family residential area. *Id.* at 152. Several years later, a landowner in the village attempted to develop his 25 acres of land commercially and, as a result, the village rezoned his portion of land as commercial. The residents of the village were adamantly opposed to the rezoning. *Id.* at 152. A short time later the village returned to the single-family residential zoning and the landowner was prohibited from any further commercial development. *Id.* at 153.

Under § 89.020 RSMo 1986. The legislative body of Oakwood is permitted to use zoning to promote health, safety, morals, and general welfare of its residents. "Certainly, where commercial and professional services are conveniently available elsewhere, none of those purposes would be enhanced by multi-ple-use zoning as compared to one-family dwelling use." *Calverton Park*, 454 S.W.2d at 582. In addition, the objectives of § 89.040 are to "lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; and to avoid undue concentration of population." Those objectives are better served by a single-use zoning ordinance than they would be from multiple-use zoning in such a small area. *Id.* The Village of Oakwood is a bedroom community which has been divided into 80 lots and borders the neighboring city of Gladstone near North Oak Trafficway, Barry Road and Vivion Road (all heavily traveled thoroughfares). There are numerous commercial facilities located a short distance from Oakwood. Given the nature of the community, it was appropriate for Oakwood to zone all of the land in its boundaries as single-family residential.

### C. *Comprehensive Plan*

■ Contrary to the assertion by Landowners, there is no requirement for the existence of a *separate* comprehensive plan in order for a zoning regulation to be constitutional. While the existence of a separate well-delineated plan may make it easier to establish an appropriate use of Oakwood's police power, and the reasonableness of the regulation or ordinance, it is not a constitutional requirement. *See e.g., Central Motors Corp. v. City of Pepper Pike*, 63 Ohio App.2d 34, 409 N.E.2d 258, 280 (1979); *Bruno v. Brown*, 414 Pa. 361, 200 A.2d 405 (1964). If it were a constitutional requirement, all zoning prior to the enactment of § 89.040 which requires all zoning to be done "in accordance with the comprehensive plan," would have been unconstitutional. Furthermore, even if it were a constitutional requirement, a plan may be inferred from Ordinance No. 10, and Oakwood's subsequent zoning ordinances (specifically ordinances 33, 46, 48, and 66), that Oakwood planned on being a small residential bedroom community.[2]

---

**2.** § 89.140 RSMo 1986 provides:

Previous ordinances to remain in force: Wherever any municipality pursuant to an act of the

## II. Statutory Attack

■ The second part of the appeal is that Ordinance No. 10 is invalid due to Oakwood's failure to provide a comprehensive plan pursuant to § 89.040 RSMo 1986. § 89.040 provides:

> Such regulations **shall be made in accordance with a comprehensive plan** and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air.... Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout such municipality. (emphasis added).

In their petition, Landowners assert, since there is not a separate document or documents designated as the "comprehensive plan," Oakwood did not comply with the statute. Remember that the requirement of a plan is based on the premise that zoning regulations are not an end in and of themselves, but are the means to the end to sound planning for the public good. *Dawson v. Blaine County*, 98 Idaho 506, 509, 567 P.2d 1257, 1260 (1977). Zoning "does no more than apply the rules of good housekeeping to public affairs. It keeps the kitchen stove out of the parlor, the bookcase out of the pantry, and the dinner table out of the bedroom." *Lebanon v. Woods*, 153 Conn. 182, 215 A.2d 112, 121 (1965) (Murphy, J., dissenting) (citing Metzenbaum, Law of Zoning (1930) p. 6) (Judge Murphy dissents because the zoning provision in *Woods* did not regulate use in addition to the area). The requirement of a comprehensive plan is not a "mere technicality which serves only as an obstacle for public officials to overcome in carrying out their

duties" but, rather, is the essence of zoning. *Udell v. Haas*, 21 N.Y.2d 463, 288 N.Y.S.2d 888, 893, 235 N.E.2d 897, 900–901 (1968). Without a plan there can be no rational allocation of land use. *Id.* The crux of this appeal is the question: what form must a comprehensive plan take in order to comply with § 89.040?

There is no definition of a comprehensive plan in chapter 89, governing zoning and planning of municipalities in Missouri. The language used in the Missouri statute mirrors that used in the Standard State Zoning Enabling Act, which has acted as the model for a majority of the states—i.e., all regulations must be "in accordance with the comprehensive plan." While there is not an exact definition, it can be said that a:

> " 'plan' connotes an integrated product of a rational process and "comprehensive" requires something beyond a piecemeal approach, both to be revealed by the ordinance in relation to the physical facts and the purposes authorized" by statute. *Kozesnik v. Montgomery, Twp.*, 24 N.J. 154, 131 A.2d 1 (1957).

Oakwood cites *Strandberg v. Kansas City*, 415 S.W.2d 737 (Mo. banc 1967) as providing the definitive answer to this case. This court does not agree. In *Strandberg*, the city had a comprehensive plan, but it was not enacted by the City Council of Kansas City. The court noted that in a:

> "narrower sense there is a comprehensive plan for each of the districts in that the regulations and restrictions must be uniform for each class or kind of building throughout each district. In a larger sense the term may properly be applied to the general zoning ordinance in effect at a particular time including all valid amendments thereto." *Id.* at 744. (cites omitted).

---

legislature of this state shall have adopted an ordinance or ordinances for any of the purposes covered by sections 89.010 to 89.140, such ordinance or ordinances shall be deemed to have been adopted under the provisions of sections 89.010 to 89.140, and it shall not be necessary in such cases for the local legislative body to appoint a zoning commission as provided in section 89.070. All such ordinances shall remain in full force and effect except so

far as they shall be inconsistent with the provisions of sections 89.010 to 89.140, until they shall have been amended, altered or repealed by such legislative body.

There is some argument, although not put forth by Oakwood, that the preamble to Ordinance No. 10 was itself a comprehensive plan and therefore satisfies 89.040 pursuant to this statute. This opinion, however, proceeds under the theory that there was no separate plan.

The Court didn't reach the issue of whether a separate plan must exist in order for the zoning ordinance to be valid. This court notes, however, the Eastern District has held that, "Generally, the comprehensive plan referred to in the decisions are the zoning ordinances and maps." *Treme v. St. Louis County*, 609 S.W.2d 706, 715 (Mo.App.1980), citing *Strandberg*, 415 S.W.2d 737.

▮ No additional guidance is provided for the 89.040 language "comprehensive plan" in the statutes. This court therefore, looks to other jurisdictions for guidance. The notes accompanying the 1926 version of the Standard State Zoning Enabling Act indicate:

"... the draftsman intended to require some planning as an integral part of the zoning process. It is equally clear that no provision for the preparation or adoption of a written plan beyond the text of the zoning ordinance was spelled out in the act or referred in the notes. It remained for the courts to give dimension to the requirement that zoning regulations be made in accordance with a comprehensive plan." *Dawson Enterprises, Inc. v. Blaine County*, 98 Idaho 506, 509, 567 P.2d 1257, 1260 (1977) (citing 1 Anderson, American Law of Zoning § 5.03, p. 265 (2nd Ed.1976)).

This court finds the better reasoned cases, as they apply to the fact pattern at hand, are those which do not require a comprehensive plan separate and apart from the zoning ordinance itself. This court holds a comprehensive plan may be validly enacted in an ordinance itself without existing in some form separate from the ordinance. *See Furtney v. Simsbury Zoning Com.*, 159 Conn. 585, 271 A.2d 319 (1970); *Lebanon v. Woods*, 153 Conn. 182, 215 A.2d 112 (1965); *Dawson Enterprises, Inc. v. Blaine County*, 98 Idaho 506, 567 P.2d 1257 (1977) (superseded by legislative act requiring passage of a comprehensive plan prior to zoning ordinances); *Drake v. Craven*, 105 Idaho 734, 672 P.2d 1064 (App.1983); *Nottingham Village Inc. v. Baltimore County*, 266 Md. 339, 292 A.2d 680 (1972); *Allred v. Raleigh*, 7 N.C.App. 602, 173 S.E.2d 533 (1970); *Kozesnik v. Montgomery*, 24 N.J. 154, 131 A.2d 1 (1957); *Asian Americans For Equality v. Koch*, 72 N.Y.2d 121, 531 N.Y.S.2d 782, 527 N.E.2d 265 (1988); *Osiecki v. Huntington*, 170 A.D.2d 490, 565 N.Y.S.2d 564 (2 Dept.1991). *See Bousquet v. Transportation Ins. Co.*, 354 Mass. 152, 235 N.E.2d 807 (1968); *Columbia Oldsmobile Inc. v. City of Montgomery*, 56 Ohio St.3d 60, 564 N.E.2d 455 (1990); *Tulsa Rock Co. v. Board of County Comm'rs*, 531 P.2d 351, 357 (Okla.App.1974); *Bruno v. Brown*, 414 Pa. 361, 200 A.2d 405 (1964); *Bell v. Elkhorn*, 122 Wis.2d 558, 364 N.W.2d 144 (1985). Comprehensiveness may be found in the fact the ordinance zones all, or substantially all, of a political subdivision; that it regulates all uses; or that it covers all of the usual factors of land utilization, height area and use. Haar, In Accordance with a Comprehensive Plan, 68 Harv.L.Rev. 1154, 1158–1167 (1955).

First, in looking at the statutes themselves, there is no mandate requiring Oakwood to adopt a separate plan as a condition precedent to the enactment of the ordinance. *Central Motors Corp.*, 409 N.E.2d at 280; *Dawson*, 567 P.2d at 1261. Furthermore, "the general rule has become ... that, absent specific requirements in enabling legislation, the comprehensive plan need not have a separate physical existence apart for the zoning ordinances, and it need not be in writing, but its design may be found in the scheme apparent in the zoning regulations themselves." *Dawson*, 567 P.2d at 1261 (cites omitted). Where the enabling statute expressly requires the adoption of a comprehensive plan as a condition precedent to the passage of zoning regulations and ordinances, then a different result must occur. *Id.* 567 P.2d at 1262; *Baker v. Milwaukie*, 17 Or.App. 89, 520 P.2d 479 (1974); *Pro-Eco v. Board of Comm'rs*, 956 F.2d 635 (7th Cir.Ct. App.1992).

There are a number of cases from other jurisdictions which have been faced with the issue now before this court.

*Kozesnik v. Montgomery Twp.*, 24 N.J. 154, 131 A.2d 1 (1957), an oft-cited case, is one of the earlier cases to attack this question. In *Kozesnik*, the plaintiff landowners challenged the validity of amendments to zoning ordinances of two townships, Hillsborough and Montgomery, proposed by a rock

mining company (Minnesota Mining and Manufacturing Co.). The amendments permitted the mining company to quarry and process rock in Hillsborough and establish a plant to color the rock for roofing granules in Montgomery. At the time of the application for amendment the relevant areas were zoned for agricultural or residential uses. Both townships had few people living in them; most of the land in the townships was used for farming, a few businesses were also there. *Id.* 131 A.2d at 4–5.

Plaintiffs contended the amendments were not in accordance with the comprehensive plan. *Id.* 131 A.2d at 6. Their first argument was that there could not be a comprehensive plan unless it was evidenced in writing separate from the regulation itself. *Id.* The court said a "plan" connoted an integrated product of a rational process and "comprehensive" requires something beyond a "piecemeal approach," which was evidenced by the ordinance considered in relation to the physical facts and purposes as authorized by the New Jersey statute. *Id.* 131 A.2d at 7. The court held the plan did not have to have a separate physical form ... the "plan may readily be revealed in an end-product—here the zoning ordinance—and no more is required by statute." *Id.* 131 A.2d at 8.

In *Town of Lebanon v. Woods*, 153 Conn. 182, 215 A.2d 112 (1965), Woods, in 1961, bought a tract of land, approximately 400 acres, with the intention of establish a housing development of 1060 houses built on ¼ acre lots. At the time he purchased the land, the town was without zoning. *Id.* 215 A.2d at 114. In 1961, Lebanon was almost exclusively residential; there were 750 homes and 9 small commercial or mercantile establishments. *Id.* 215 A.2d at 116. In April, 1962, Lebanon adopted zoning which required one acre as the minimum lot size throughout the town. *Id.* 215 A.2d at 114. Following the adoption of the ordinance Woods built fourteen homes on lots smaller than an acre. Lebanon received an injunction restraining Woods from furthering his housing development unless he complied with the zoning regulations. Defendant appealed the injunction and Lebanon took a cross appeal. *Id.* 215 A.2d at 114.

Defendant, as one of his points on appeal, asserted the regulations were invalid because they were not adopted with reference to a comprehensive plan as required by law. *Id.* 215 A.2d at 115–116. The court noted the regulations "disclose a comprehensive plan imposing lot area, building placement and minimum living space requirements on all property in the town as a whole except that special and less drastic requirements are made applicable to "seasonal" dwellings...." The type of plan used must "depend in large part on the character of the locality of for which they are designed." *Id.* 215 A.2d at 117. The court held:

> The mere fact that the regulations obviously would have been improved had they contained provisions governing in more detail the future development of the town and protecting the town against the possible indiscriminate intrusion of business, mercantile or industrial enterprises would not, under the circumstances of this particular case, including the rural, sparsely populated, almost wholly residential character of the town and the absence of any threat of such commercial instruction, justify in holding the regulations void.

*Id.*

In *Dawson Ent. Inc. v. Blaine County*, 98 Idaho 506, 567 P.2d 1257 (1977), Dawson was an Illinois corporation doing business in Idaho and is the stockholder of Dawson Ramsey Motor Sales, a General Motor Franchise in Ketchum. Dawson decided its existing location was outmoded and bought the property in dispute, a tract of 12.8 acres, for its new location. The parcel in dispute was a wedge shaped piece of property with the apex of the triangle consisting of Highway 93 on the west which intersected with the Union Pacific railroad right-of-way on the east. The land was zoned for one acre agricultural/residential. Dawson applied for rezoning which was denied. The court held there did not have to be a separate comprehensive plan because "by the adoption of the zoning ordinances and the use of the Blaine County Planning and Zoning objectives, a plan was adopted sufficiently to comply" with Idaho law. *Id.* 567 P.2d at 1261.

In *Osiecki v. Huntington,* 170 A.D.2d 490, 565 N.Y.S.2d 564 (2 Dept.1991) the court held there need not be a separate plan where the plaintiffs challenged the zoning of its land, (approximately five and one-half acres) for residential use. The neighboring properties were not of the same zoning or use. Two parcels to the west were zoned for commercial office buildings and have been used as such; the property to the south and east are zoned residential, but were used for farm and water district purposes by the Town. *Id.* 565 N.Y.S.2d at 565.

 Similarly, this court finds that Oakwood acted in conformance with its comprehensive plan because the preamble to the ordinance indicated an intent to create a single residential district with the same boundaries as the incorporated Oakwood; because there was a meeting by the trustees of the village which appointed a zoning commission to meet and make recommendations regarding regulations. The board met and the notice for a public hearing was given. The commission made its final record at the meeting and recommended the ordinance be enacted. The ordinance was subsequently enacted. The ordinance was comprehensive in scope; setting out the area, height, and use requirements. Since there is evidence that planning was done, and there is no specific requirement that the village pass a separate comprehensive plan as a condition precedent to the passage of zoning ordinances. This court finds that Ordinance No. 10 was both constitutionally and statutorily valid.

 This opinion does *not* stand for the proposition that a municipality, no matter what its size, does not have to adopt a comprehensive plan separate from the zoning ordinance. What was sufficient for Oakwood in this case, an ordinance which provided comprehensive zoning for a single land use, and which evidenced future plans for the community, *will not necessarily suffice* for all larger towns or cities. *Woods,* 215 A.2d at 117; *Nottingham Village,* 292 A.2d at 688. Without a comprehensive plan, courts in situations such (as the case at bar), will have to determine on an ad hoc basis whether their efforts meet the requirement of creating a "general plan to control and direct the use and development of property in a municipality." *Id.* 215 A.2d at 116. The summary judgment ruling Ordinance No. 10 invalid is reversed.

Landowners cross-appeal as to their request for attorney's fees is dismissed. The trial judge noted in the judgment, and in a subsequent clarification hearing, that the issue of fees was not being addressed and, therefore, was still an issue to be decided with the balance of the case.

The judgment is reversed, the cross-appeal is dismissed, and the cause is remanded.