CITY OF WAUKESHA, Plaintiff-Respondent,

v.

TOWN BOARD OF the TOWN OF WAUKESHA, Plan Commission of the Town of Waukesha, Jondex Corporation and George Eagan, Jr., Defendants-Appellants. [Case No. 94-0812]†

W.T. CORPORATION and Waukesha County, Plaintiffs-Respondents,

v.

The TOWN OF WAUKESHA, the Plan Commission of the Town of Waukesha, the Town Board of the Town of Waukesha, George Egan, Jr., and Jondex Corporation, Defendants-Appellants. [Case No. 94-0813]†

Royal C. NEUMANN, Plaintiff-Respondent,

v.

TOWN OF WAUKESHA and Town of Waukesha Plan Commission, Defendants-Appellants,†

WAUKESHA COUNTY, Defendant-Respondent. [Case No. 94-0814]

† Petition to review denied.

Royal C. NEUMANN and Waukesha County, Plaintiffs-Respondents,

v.

TOWN OF WAUKESHA, Town of Waukesha Plan Commission and Jondex Corporation, Defendants-Appellants.
[Case No. 94-0815] †

Court of Appeals

*Nos. 94–0812, 94–0813, 94–0814, 94–0815. Oral argument March 10, 1995.—Decided December 6, 1995.*

(Also reported in 543 N.W.2d 515.)

†Petition to review denied.

On behalf of the defendants-appellants, there were briefs and oral arguments by *James W. Hammes* of *Cramer, Multhauf & Hammes* of Waukesha.

On behalf of the plaintiff-respondent City of Waukesha, there was a brief and oral arguments by *Curt R. Meitz*, city attorney.

On behalf of the plaintiff-respondent W.T. Corporation, there was a brief and oral arguments by *Scott V. Lowry* of Waukesha.

On behalf of the plaintiff-respondent Waukesha County, there were briefs and oral arguments by *William J. Domina*, assistant corporation counsel.

On behalf of the plaintiff-respondent Royal C. Neumann, there were briefs by *James L. Steimel and*

*James L. Dunlap* of *Steimel & Dunlap, S.C.* of Waukesha. There were oral arguments by *James L. Steimel*.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J. The Town of Waukesha (Town) appeals from trial court judgments reversing the grant of a conditional use permit (permit) under the Town's planned unit development (PUD) ordinance.[1] The permit allowed for the commercial development of a 106,000 square-foot shopping center and strip mall contrary to the parcel's existing zoning. This parcel is in an area zoned R-3 (residential) and I-1 (limited industrial). The Town raises four issues on appeal: (1) whether the PUD ordinance is valid and enforceable, (2) whether this ordinance authorizes the Town Board of the Town of Waukesha (Town Board) to approve a PUD as a conditional use, (3) whether the action of the Town Board in issuing the permit was arbitrary and unreasonable and (4) whether the City of Waukesha (City) has standing to bring an action contesting the issuance of the permit.[2] Because we conclude that the

---

[1] Four separate lawsuits were brought by the City of Waukesha, Waukesha County, W.T. Corporation and Royal C. Neumann, separately and in concert, seeking to block the issuance of the conditional use permit. These were consolidated for disposition by the trial court. Following the appeal by the Town, all four appeals were again consolidated by order of this court.

[2] Because of the multiplicity of lawsuits in this case, and the fact that the dispositive issue was raised and argued by several other parties as well as the City, the issue of standing for the City is deemed moot. A matter is moot if a determination sought cannot have a practical effect on an existing controversy. *Racine v. J-T Enters. of Am.*, 64 Wis. 2d 691, 700, 221 N.W.2d 869, 874 (1974). While the Town conceded at oral argument that the issue of standing was "functionally moot," the Town argued that

597

PUD ordinance, TOWN OF WAUKESHA, WIS., CODE § 11.11(i)(14), under which the conditional use permit was granted was invalid and void, we affirm.

On June 27, 1979, the Town Board enacted a zoning ordinance in accordance with the provisions of § 62.23, STATS. That ordinance zoned the parcel at issue residential and limited industrial. In the spring of 1990, an application was filed with the Town to rezone the parcel to a B-2 (local business) designation. The Town Board held a public hearing and subsequently adopted an ordinance rezoning the parcel as requested. The B-2 designation allows commercial development. *See* TOWN CODE § 11.34.

In order to complete the rezoning process, the approval of the county board of supervisors (county board) was required. *See* § 60.62(3), STATS. After the Town submitted the rezoning for consideration, the county board requested further information. Before the rezoning could be resubmitted, the City, which opposed the rezoning, adopted an extraterritorial zoning ordinance. This had the legal effect of placing a two-year "freeze" on any kind of zoning changes to any unincorporated property within three miles of the corporate limits of the city. *See* § 62.23(7a), STATS. Because of the parcel's location—an "island" surrounded by city property—the freeze effectively blocked the Town's attempt to rezone the parcel. After the adoption of the extraterritorial ordinance by the City, the Town's request for rezoning was never taken to the county board for approval.

it should be addressed as a potentially recurring issue. We decline to address the issue of standing on these facts. A reviewing court will generally decline to address moot issues. *See State ex rel. Wis. Envtl. Decade v. Joint Comm. for Review of Admin. Rules,* 73 Wis. 2d 234, 236, 243 N.W.2d 497, 498 (1976).

In January 1993, the Town Board amended several sections of its zoning code, including an amendment to TOWN CODE § 11.11(i)(14), a paragraph of the conditional uses section. The amendment changed the title of this paragraph from "Residential Planned Unit Developments" to "Planned Unit Developments," and also included significant changes in the provisions of the section. All of the proposed amendments were unanimously approved by the county board, as required by § 60.62(3), STATS.

Several months later, George Egan, Jr. and Jondex Corporation made application to the Town for a conditional use permit which would authorize a commercial PUD on the same parcel that had been the subject of the earlier rezoning attempt. Under the amended section of the Town's zoning code, a commercial PUD could be approved as a conditional use in any district, as long as certain underlying conditions were met.[3] As a condition of approval, the Town was to receive $300,000

---

[3] The amended portion of TOWN CODE § 11.11(i)(14)B. stated:

No Commercial Planned Unit Development may be authorized except upon the following conditions:

1. The economic practicality of the proposed Planned Unit Development shall be justified on the basis of purchasing potential, competitive relationship and demonstrated tenant interest.

2. The proposed Planned Unit Development shall be served by adequate off-street parking, loading and service facilities.

3. The Planned Unit Development shall not create an adverse effect upon the general traffic pattern or adjoining property values.

4. Architecture, landscaping, lighting and general site development shall be compatible with the surrounding neighborhood.

5. The aforementioned requirements shall be certified by the Town as having been fully met.

from the developers if the conditional use permit were granted.

The Plan Commission of the Town of Waukesha (Plan Commission) and the Town Board conducted a public hearing on the permit as mandated. *See* TOWN CODE § 11.11(c). Following the hearing, the Plan Commission determined that all conditions identified in the zoning ordinances for the issuance of the permit had been satisfied. *See* TOWN CODE § 11.11(d). The Plan Commission recommended that the Town Board grant the requested permit, which it did.

The City then filed a claim[4] for a writ of certiorari to review the actions of the Plan Commission and the Town Board, and requesting a judgment reversing the issuance of the permit and a finding that the action of the Town Board was "illegal, arbitrary, capricious, [and] unreasonable." The City's second claim was for a declaratory judgment, pursuant to § 806.04, STATS., to declare that the issuance of a conditional use permit for a commercial PUD in a residential zoning district was illegal, void and contrary to law.

The trial court found that the action of the Town in issuing a permit under this ordinance was invalid in that the granting of a conditional use permit for a commercial PUD in a residential district was a "de facto rezoning" of the property. The trial court further held

---

[4] The City's first complaint requested that the court issue a writ of certiorari "to review the determinations and proceedings of the Town of Waukesha Plan Commission and Town Board." This was later amended to include a request for a declaratory judgment. The City's claim was followed by actions brought by the other parties to this consolidated appeal. In several of those cases, the issue of the validity of the ordinance was raised. Any reference to the City's argument incorporates by reference the similar claims made by the other parties.

that Town Code § 11.11(i)(14) was invalid and void. This appeal followed.

■

The parties to this consolidated appeal have raised various issues and offer varying arguments with respect to the trial court's decision. If a decision on one point disposes of an appeal, this court need not decide other issues raised. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983). Those arguments pertinent to our analysis will be addressed as applicable.

■

The dispositive issue requires this court to review and interpret the validity of a zoning ordinance. The construction and application of an ordinance to a particular set of facts is a question of law which we review de novo. *Eastman v. City of Madison,* 117 Wis. 2d 106, 112, 342 N.W.2d 764, 767 (Ct. App. 1983). The rules for the construction of statutes and ordinances are the same. *County of Sauk v. Trager,* 113 Wis. 2d 48, 55, 334 N.W.2d 272, 275 (Ct. App. 1983), *aff'd,* 118 Wis. 2d 204, 346 N.W.2d 756 (1984). We begin with the premise that a zoning ordinance enacted pursuant to § 62.23, Stats., is presumed to be valid and must be liberally construed in favor of the municipality. *Bell v. City of Elkhorn,* 122 Wis. 2d 558, 568-69, 364 N.W.2d 144, 149 (1985). An alleged invalidity must be clearly shown by the party attacking the ordinance. *Id.* at 569, 364 N.W.2d at 149.

The ordinance in question is a subsection of § 11.11 of the Town Code entitled "Conditional Uses." It states in relevant part:

CONDITIONAL USES. Conditional uses and their accessory uses are considered as special uses requiring review, public hearing and approval by

the Town Plan Commission in accordance with the regulations of this section.

. . . .

(d) <u>Basis of Approval</u>. The determination of such conditional use shall be by the bodies hereinafter designated and shall be based on consideration of whether or not the proposed use will violate the spirit and intent of the ordinance; . . . .

. . . .

(i) <u>Conditional Uses Permitted</u>. Subject to the foregoing, in addition to such uses enumerated in the district regulations, the following may be permitted in the districts specified, . . . .

. . . .

(14) Planned Unit Developments: Due to the increased urbanization and the associated greater demands for open space, it is herein provided that there be flexibility in the regulations governing the development of land. This provision is intended to encourage Planned Unit Development in directions which will recognize both the changes in design and technology in the building industry, and the new demands in the market. . . .

. . . .

D. After all conditions of a Planned Unit Development project are certified by the Town as being completed, the conditional use status of such completed development shall be changed to a permitted use in the district in which it is located.

This amended portion, beginning with paragraph (14), was enacted in January 1993 by the Town Board and presented to the county board for approval.[5] *See*

---

[5] Prior to the amendment, paragraph (14) read in relevant part as follows:

§ 60.62(3), STATS. This amendment received unanimous approval. Although the statutory mandates for amending the zoning ordinance were followed, the trial court determined that the dispositive issue was the validity of the amendment. We agree. In our de novo review of the validity of this ordinance, we first consider the concept of a "conditional use."

Conditional uses enjoy acceptance as a valid and appropriate means of municipal planning on virtually a universal scale. *State ex rel. Skelly Oil Co. v. Common Council*, 58 Wis. 2d 695, 700, 207 N.W.2d 585, 587 (1973). Conditional uses are flexibility devices designed to cope with situations where a particular use, though consistent with the use classification of a specific zone, may create special problems if allowed to locate as a matter of right in a particular district. *Id.* at 700-01, 207 N.W.2d at 587. A conditional use permit allows a property owner to put property to a use which the ordinance *expressly permits* when certain conditions have been met. *Id.* at 701, 207 N.W.2d at 587.

A conditional use is further defined when contrasted to a "variance." A variance "authorizes a particular property owner to use his property in a manner which is *prohibited by the ordinance* when not to be able to do so would be a hardship." *Id.*

---

(14) *Residential* Planned Unit Developments: *In the A-1 Agricultural District and in any Residential District.* Due to the increased urbanization and the associated greater demands for open space, it is herein provided that there be flexibility in the regulations governing the development of land. This provision is intended to encourage Planned Unit Development in directions which will recognize both the changes in design and technology in the building industry, and the new demands in the *housing market.* [Emphasis added.]

The Town's amended ordinance allowed the Town to approve any type of PUD (residential, commercial or mixed use) as a conditional use. A PUD is a planning device employed to control the development of a large tract of land. 2 ROBERT M. ANDERSON, AMERICAN LAW OF ZONING 3D § 11.01, at 418 (1986). A PUD ordinance commonly authorizes a planned mix of residential, commercial and even industrial uses. This planned mix of uses is allowed subject to restrictions which are calculated to achieve compatible use of the land. *Id.* § 11.12, at 443. PUDs were intended to be "a flexible approach to the regulation of land use without sacrificing the values which zoning was intended to preserve." *See id.* § 11.12, at 444.

The most common type of PUD ordinances provide for the creation of such a district through a two-step legislative process. *Id.* § 11.15, at 451. An initial ordinance describes a PUD district and outlines the enactment procedure. The actual creation of the district is commonly accomplished by a second legislative act—an amendment to the zoning ordinance. *Id.* § 11.15, at 451-52. This second step is normally preceded by a full review of the plans by a planning board.

In this case, the ordinance at issue allowed the Town Board, without any zoning district restrictions, to authorize a PUD through the grant of a conditional use permit. A conditional use must be consistent with the use classification of a particular zone. *See Skelly Oil*, 58 Wis. 2d at 701, 207 N.W.2d at 587. By failing to require that an approved PUD be in harmony with the zoning restrictions of the underlying district, the ordinance allowed the Town Board to approve a PUD in any district.

The Town argues that commercial development is permitted as a conditional use in a residential district because TOWN CODE § 11.31(a)(2) (conditional uses in a R-3 district) clearly incorporates TOWN CODE § 11.11(i)(14) (the PUD ordinance) as a conditional use. The Town contends that this authorizes the Town Board to approve conditional use permits which allow the construction of commercial PUDs in a residential district.[6] We disagree.

In *Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison,* 178 Wis. 2d 74, 503 N.W.2d 265 (Ct. App. 1993), this court stated that "the very essence of zoning is the territorial division of land into use districts . . . and uniformity of use." *Id.* at 93, 503 N.W.2d at 271 (quoted source omitted). An ordinance which includes pervasive regulation of the use of land "must be surrounded with the substantive and procedural safeguards which zoning requires." *Id.* at 94, 503 N.W.2d at 272. Control over the use of property is a zoning control which can only be imposed by a comprehensive zoning ordinance which comports with statutory guidelines. *See id.* at 101-02, 503 N.W.2d at 275.

Implicit in the designation of an area as a PUD is the approval of the use that a developer seeks to make of a particular piece of property. A PUD will show a mix of uses: mixed residential uses, usually some commercial uses, and possibly even industrial uses. ANDERSON § 11.12, at 445. An ordinance allowing a local plan com-

---

[6] The Town's argument is premised on its belief that since the county board approved the amended ordinance, the amended ordinance is valid as applied. That reliance is misplaced.

mission to authorize a PUD as a conditional use must specify particular areas for the placement of any proposed PUD, and the placement must comport with the zoning restrictions of the designated districts. The town ordinance was deficient in this regard.

In this case, because a PUD was designated a conditional use and because the amended ordinance did not restrict or define the zoning districts in which a PUD might be placed,[7] the Town Board was able to approve a conditional use permit which allowed the development of a commercial strip mall in an area zoned residential and limited industrial. Under the guise of a conditional use, the Town Board in essence rezoned without seeking the necessary approval of the county board. *See* § 60.62, STATS.

In further support of this, we note that TOWN CODE § 11.11(i)(14)D specifies that once a PUD project is certified by the Town as complete, "the conditional use status of such completed development shall be changed to a permitted use in the district in which it is located." Upon completion, an approved PUD, embracing a use not allowed by the more restrictive classification of the underlying district, would become a permitted use. In actual practice, the zoning of the affected district would be changed to accommodate the PUD.

■

We conclude that the amended PUD ordinance, which allowed for the placement of a PUD in any dis-

---

[7] We note that paragraph (14), "Planned Unit Development," was the only conditional use which did not specify the zoning districts in which the particular use could be approved. Prior to the amendment, this subparagraph allowed *residential* PUDs in "the A-1 Agricultural District and in any Residential District."

trict[8] subject only to the approval of the Town Board as a conditional use, allowed the Town to rezone without the mandated safeguards of county board approval. The PUD ordinance is an invalid exercise of the Town Board's zoning authority.

The only remaining consideration is whether the ordinance as a whole is invalid and void, or whether there remains a valid and severable portion of this ordinance. In determining the validity of a zoning ordinance, each case must be decided on its own facts. *Eggebeen v. Sonnenburg,* 239 Wis. 213, 220, 1 N.W.2d 84, 87 (1941). If a statute consists of separable parts and the offending portions can be eliminated and still leave provisions capable of being carried out, the valid portions must stand. *Stahl v. Town of Spider Lake,* 149 Wis. 2d 230, 236, 441 N.W.2d 250, 252 (Ct. App. 1989). However, it is also an accepted rule of construction that if there appears to be reason from the act itself for the conclusion that it was intended as a whole and the legislative body would not have enacted the valid part alone, in that instance if one is void the whole is void. *Katt v. Village of Sturtevant,* 269 Wis. 638, 641-42, 70 N.W.2d 188, 190 (1955).

Here, the record provides ample evidence that this ordinance was enacted as a whole in an attempt to allow this commercial development to go forward in an area which was too restrictively zoned. In the findings of fact, the trial court noted that: (1) the Town was at all times predisposed to grant the conditional use and was an initiator in creating a procedure to accommodate the proposed use, (2) the Town was predisposed to

---

[8] C-1 conservancy districts are the only ones specifically excluded.

grant the conditional use prior to receiving any testimony at the public hearing, (3) all comments from the Town's representatives at the hearing were adversary and partial, (4) the City's rational explanation for its opposition was totally ignored, (5) there was a proposed payment by the developer of $300,000 once the project was approved, (6) there was the potential for annexation by the City of the parcel in question and subsequent loss of reimbursement and (7) there had been a blocked attempt to rezone the property several years earlier.

We conclude that the PUD ordinance, TOWN CODE § 11.11(i)(14), is void and invalid in its entirety. The factual findings of the trial court clearly support the view that the Town Board would not have enacted this ordinance other than in its entirety. The post-enactment chain of events strongly indicates that the Plan Commission had a specific objective in amending the PUD ordinance.

Based on our conclusion that the PUD ordinance is void and invalid, we need not address the remaining issues. If a decision on one point disposes of an appeal, this court need not decide other issues raised. *See Sweet*, 113 Wis. 2d at 67, 334 N.W.2d at 562.

*By the Court.*—Judgments affirmed.