STATE of Wisconsin EX REL. VILLAGE OF NEWBURG,
Plaintiff-Appellant,

v.

TOWN OF TRENTON, Defendant-Respondent,

DEERPRINT ENTERPRISES, LLC,
Intervening Defendant-Respondent.

Court of Appeals

No. 2008AP2997. *Submitted on briefs June 6, 2009.*
*—Decided August 26, 2009.*

2009 WI App 139

(Also reported in 773 N.W.2d 500.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *H. Stanley Riffle* and *Julie A. Aquavia* of *Arenz, Molter, Macy & Riffle, S.C.* of Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Deborah S.R. Hoffmann* of *Houseman & Feind, LLP* of Grafton.

On behalf of the intervening defendant-respondent, the cause was submitted on the brief of *Phillip J. Eckert* of *Eckert Law Office* of West Bend.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. BROWN, C.J. The Wisconsin legislature generally requires an incorporated municipality to act within its own territorial boundaries. But our legislature has recognized that a municipality may need to act outside its boundaries to plan for its future expansion and physical development. So the legislature allows a

municipality to temporarily enact a moratorium that prohibits unincorporated towns from changing the zoning of land next to the municipality's boundaries. The moratorium gives the municipality time to work with each unincorporated town affected to prepare and adopt a comprehensive plan on how the land in that unincorporated town should be used. This power is called extraterritorial zoning. *See* WIS. STAT. § 62.23(7a) (2007–08).[1] The Village of Newburg had an extraterritorial zoning moratorium in place that prohibited zoning changes on land within one and one-half miles of its boundaries for two years from November 20, 2006. The Village brought this declaratory judgment action asserting that the Town of Trenton violated the moratorium by approving a development with land uses that the Town's zoning ordinances allegedly prohibit without rezoning. The circuit court agreed with the Town's conclusion that it properly followed its ordinances. But we hold that the Town engaged in a de facto rezoning of the land by approving uses its ordinances do not allow. We therefore reverse.

## BACKGROUND

¶ 2. A parcel of land owned by Deerprint Enterprises, LLC lies within the Town in the one and one-half mile extraterritorial zoning moratorium. This parcel is zoned residential, CES-5 country estate. CES-5 country estate zoning allows "single-family residential development in a farmette, or estate-type setting, at densities not to exceed one (1) dwelling unit" per five acres. TOWN OF TRENTON, WIS., Zoning Code § 10–1–61 (2002). The Town's ordinances do not list commer-

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

cial or industrial activities as permissible uses on a parcel zoned CES-5 country estate.[2] *Id.*

¶ 3. In 2007, the Town board approved a six-unit condominium development on the Deerprint parcel. The development consisted of five residential units and one commercial/industrial unit. The plan was for the commercial/industrial unit to house an existing commercial business. Moreover, the condominium documents provided that "[a]dditional commercial units may be created . . . by subdividing all or a portion of the space included within the original commercial/industrial unit to form one or more additional commercial units."

¶ 4. The Village argued that the Town's approval violated the Village's moratorium and the Town's zoning ordinances. It contended that since the Deerprint development included a nonconforming mixed use, and the Town's ordinances prohibit mixed uses, then the Town must approve a planned development overlay for the parcel. The Town's ordinances state that an overlay permits developments that mix compatible uses, allowing for a flexible development design that would otherwise violate the zoning requirements of the parcel. *See* TOWN OF TRENTON, WIS., Zoning Code § 10–1-59 (2002). As a condition of allowing nonconforming uses, an overlay requires the developer to work with the Town plan commission to ensure that the developer's plan is not contrary to the general welfare and economic prosperity of the community and does not burden public infrastructure. *Id.* The Village asserted that an overlay would be a change in zoning that violated the morato-

---

[2] Country estate zoning does allow for commercial activity related to outdoor recreational use. TOWN OF TRENTON, WIS., Zoning Code § 10–1-61 (2002).

rium. So it requested a declaration that the Town's approval of the Deerprint parcel was invalid and that the Town cannot change the zoning of the land within the moratorium.

¶ 5. The Town answered the complaint and filed a motion to dismiss asserting that the Village did not have standing.[3] The Town maintained that its approval relied on the condominium process, not zoning regulations and, therefore, it did not need to approve an overlay. But at the motion hearing the Town conceded that if its ordinances required an overlay, the approval would be a zoning change that would violate the Village's moratorium. Except for this concession, Deerprint agreed with the Town.

¶ 6. The circuit court concluded that the Town did not need to confer an overlay nor rezone the property to approve the condominiums. Like the Town and Deerprint, it focused on the approval as one for a condominium form of ownership, not for mixed uses or rezoning. It reasoned that the Town and Deerprint "are [not] going to construct commercial or industrial or any sort of other uses on this property so that the change of zoning will potentially have a direct effect on the Village. We are going to end up with . . . six structures, on a parcel that was zoned for those purposes." And since no zoning changes were needed, the circuit court

---

[3] After the Town filed its answer twenty-eight days after service, the Village filed a motion for default judgment. The circuit court extended the time for the Town to answer and denied the Village's default motion. Though the Village appeals this ruling, we need not discuss it as we reverse on a different issue. *See City of Waukesha v. Town Bd.*, 198 Wis. 2d 592, 601, 543 N.W.2d 515 (Ct. App. 1995) ("If a decision on one point disposes of an appeal, this court need not decide other issues raised.").

concluded that the Village did not have standing. It thus granted summary judgment in favor of the Town on the basis of standing.

## DISCUSSION

### *Mootness*

¶ 7. Before we reach the main issue in this case (standing) we will address the Town's assertion that this appeal is moot. The Town points out that the Village's moratorium expired in 2008, so the Village cannot enact another one until next year, 2010.[4] And in the Town's opinion, now "Deerprint can re-zone and develop its property . . . with no approval needed from [the Village.]" A case is moot when the decision sought by the parties cannot have any practical legal effect upon a then existing controversy. *W.J.C. v. County of Vilas*, 124 Wis. 2d 238, 239, 369 N.W.2d 162 (Ct. App. 1985).

¶ 8. The Town does not cite any authority for its contention that the sunset of a law wipes out violations of that law occurring before expiration, and we are

---

[4] The interim zoning moratorium may be extended for one more year after the initial two-year period, but the extension must be at the recommendation of the joint extraterritorial zoning committee established under Wis. Stat. § 62.23(7a)(c). Sec. 62.23(7a)(b). Once the two-year or extended period has expired, no other interim zoning moratorium can be enacted affecting the same area for another two years. *Id.* However, there is no evidence that the Village filed a one-year extension on the interim zoning moratorium, so the moratorium was effective only for the two-year period ending November 20, 2008.

unaware of any such authority. But the law is clear for the analogous situation where a statute is repealed before an action is concluded. *See* WIS. STAT. § 990.04. There, a person who violates a statute is subject to that statute's consequences, even if the legislature repeals the statute before the opposing party commences or completes its cause of action for the alleged offense. *Id.*; *see also State v. Thums*, 2006 WI App 173, ¶ 10, 295 Wis. 2d 664, 721 N.W.2d 729.

¶ 9. We conclude that this principle applies here as well. Litigation is, unfortunately, often lengthy, sometimes calculated in terms of multiple months and even years. And if an extraterritorial zoning action were always moot when a violation occurred before sunset but litigation was still pending after, then miscreants could use the time lag often present in lawsuits as a means to avoid the sanctions which would normally occur by reason of malfeasance.[5] We hold that since the Village had a legitimate right to review the Town's approval of the Deerprint development at the time the Town approved it, the Village has that right now.

*Standing*

¶ 10. The main issue on appeal is the Village's standing to seek declaratory relief. Whether a party has standing to seek declaratory relief presents a question

---

[5] If the law were the way the Town would like it to be, then we would likely not have been able to decide past cases such as *City of Waukesha*. Based on the facts in *City of Waukesha*, the interim moratorium was enacted sometime around 1990, but we did not decide the case until 1995. *City of Waukesha*, 198 Wis. 2d at 598. This is well after the two-year limit on moratoriums.

of law we review de novo. *Town of Eagle v. Christensen*, 191 Wis. 2d 301, 315, 529 N.W.2d 245 (Ct. App. 1995). A party seeking declaratory relief must have a legally protected interest in the controversy, giving it a personal stake in its outcome. *Id.* at 315–16. We construe standing in declaratory judgment actions liberally, in favor of the complaining party, as it affords relief from an uncertain infringement of a party's rights. *Id.* at 316.

¶ 11. The Village's legally protected interest stemmed from its extraterritorial zoning authority. *See* WIS. STAT. § 62.23. Under that authority, the Village effectively "froze" any kind of zoning changes to the unincorporated Deerprint parcel. This freeze effectively blocked any rezoning. *See City of Waukesha v. Town Bd.*, 198 Wis. 2d 592, 598, 543 N.W.2d 515 (Ct. App. 1995). Section 62.23(8) authorizes a municipality to take action against any use or proposed use in violation of § 62.23. Therefore, when the Village commenced this declaratory action, it had a legally protected interest if the Town made any zoning changes to the Deerprint parcel while the moratorium was in effect.

¶ 12. The Town concedes that if it had to grant an overlay to Deerprint, then its approval would violate the Village's moratorium, thus providing the Village with standing. So, this issue depends on the interpretation of the Town's zoning ordinances. We review the interpretation of ordinances de novo and apply the same interpretation rules to ordinances as we do to statutes. *City of Waukesha*, 198 Wis. 2d at 601.

¶ 13. The Town's argument on appeal mirrors its argument before the circuit court. It theorizes that all it did was approve a developer's condominium plan and that its action did not require rezoning, special zoning or approval of an overlay. We agree that the condo-

432

minium form of ownership itself does not require any rezoning or an overlay. As Wis. Stat. § 703.27 states, "zoning or other land use ordinance[s] or regulations may not prohibit the condominium form of ownership or impose any requirements upon a condominium that it would not impose if the development were under a different form of ownership."

■

¶ 14. But the Town's argument misses the point. As explained in a practice guide for Wisconsin lawyers published by the State Bar of Wisconsin,[6] condominiums are not a form of land use, *see* Wis. Stat. § 703.37, so "a change in zoning—or other approval under a zoning ordinance—should not be required for condominium conversion, *unless a change in the use of the existing property is involved.*" Michael S. Green, et al., Wis. Condominium Law Handbook § 4.5 (Third Ed. 2006) (emphasis added). Our highlighted language undercuts the Town's whole premise and supports the Village's claim that the Deerprint development changed the use of the existing property and therefore required an overlay or rezoning.

¶ 15. Here are two reasons why. First, the Deerprint parcel is zoned CES-5 country estate, a form of residential zoning, but one of the condominium units is designated commercial/industrial. The condominium declaration says that this unit may also be subdivided into additional commercial condominium units at a later date. As explained earlier, country estate zoning

---

[6] *See Hunt Club Condos., Inc. v. Mac-Gray Servs., Inc.*, 2006 WI App 167, ¶ 22, 295 Wis. 2d 780, 721 N.W.2d 117 (attorneys who wrote the Wisconsin condominium law handbook practice in the field of condominium law and possess sufficient expertise on the topic to be called upon to advise other lawyers regarding it).

allows for residential and hobby farms, and does not list commercial or industrial uses as a permissible or conditional use. TOWN OF TRENTON, Wis., Zoning Code § 10-1-61 (2002). We simply do not understand how a condominium unit set aside for commercial use does not run afoul of a zoning ordinance prohibiting commercial use just because it lies within an otherwise residential condominium development.[7]

¶ 16. Second, the Town prohibits mixed uses unless it grants an overlay. The Town's ordinance says: "No part of any lot, yard, parking area or other space required for a structure or use shall be used for any other structure or use." TOWN OF TRENTON, WIS., Zoning Code § 10-1-24 (2002). But an overlay allows a "mixing of compatible uses" that do not necessarily comport with the Town's zoning ordinances. TOWN OF TRENTON, WIS., Zoning Code § 10-1-59(a) (2002). We conclude these ordinances make the Deerprint development nonconforming unless the Town changes the parcel's zoning.

¶ 17. We discussed when nonconforming uses require rezoning in *City of Waukesha*. The issue in *City of Waukesha* was "de facto rezoning." *Id.* at 600. The City had enacted an interim zoning moratorium like the one

---

[7] In the Town's brief it states that the commercial unit contains an existing machinery business. We infer from this statement that the Town is implying the commercial unit is grandfathered in and thus conforms to the underlying zoning. But we reject this contention for two reasons. First, the Town has not explained why it matters that the unit will contain an existing business. Second, and more to the point, the condominium declaration does not limit the commercial unit's use to any existing business and it allows the commercial unit to be subdivided into additional commercial enterprises. This blows the proposition completely out of the water.

in this case. *See id.* at 598. During the moratorium, however, the Town amended its zoning ordinances to allow planned unit developments provided that the developers obtain a conditional use permit. *Id.* at 603–04. This meant that the Town could approve nonconforming uses with permits instead of zoning changes. *Id.* at 604. When the Town approved a conditional use permit that included uses not allowed as conditional uses within the zoning ordinance, the City sued. *Id.* at 598–600. We determined that planned unit developments allowed as a conditional use must comport with the zoning restrictions of the designated districts. *Id.* at 606. And since we concluded that the development approved as a conditional use did not comport with the zoning restrictions in its district, we held that "[u]nder the guise of a conditional use, the Town Board in essence rezoned without seeking the necessary approval." *Id.*

¶ 18. This case presents another instance where a Town seeks to escape the confining restrictions integral to the extraterritorial zoning moratorium by aiming to define its action as something other than a zoning change. Here, the Town gave the green light for a commercial building to exist where it is not permitted because the commercial building was part of an otherwise residential condominium plan, and thus it was a condominium issue and not a zoning issue. But a use is a use. This intended commercial use did not comport with the Town's zoning restrictions. So we conclude that what the Town did was de facto rezoning. Just because the Town did not formally rezone, this sleight of the hand did not tell the whole story. The legislature put the extraterritorial zoning ordinance in the books for a reason and we cannot allow unincorporated locali-

435

ties to seek an end-around the law.[8] If towns dislike the whole business of extraterritorial zoning moratoriums, their recourse is to obtain a change in the law through legislative means.

¶ 19. We hold that the Town violated its own ordinances in approving the Deerprint development. Therefore, we reverse and remand with directions that the circuit court proceed to the merits of the Village's declaratory judgment action.

*By the Court.*—Order reversed and cause remanded with directions.

[8] We note that the Village alternatively asserts that the Town did, in fact, grant an overlay to Deerprint and this grant violated the moratorium. We need not and do not decide the case on that basis.