COURT OF APPEALS
DECISION
DATED AND FILED

May 11, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1705**

**STATE OF WISCONSIN**

Cir. Ct. No. **2017CV112**

**IN COURT OF APPEALS
DISTRICT III**

OCWEN LOAN SERVICING, LLC,

   PLAINTIFF-RESPONDENT,

 V.

STEVEN J. ECKLEY AND SHANNON R. ECKLEY,

   DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Oneida County: MICHAEL H. BLOOM, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Steven and Shannon Eckley appeal a judgment of foreclosure.  They argue Ocwen, the loan servicer, improperly accelerated their loan.  They also argue Ocwen failed to prove a prima facie case for summary judgment establishing the entire amount of the foreclosure judgment.  We reject the Eckleys' arguments, except we agree that the judgment improperly included $19,240.72 in prior servicer fees, the basis for which is unclear.  We reverse that portion of the judgment and remand for further proceedings consistent with this opinion, but we affirm the judgment in all other respects.

## BACKGROUND

¶2    Ocwen is a loan servicer and current holder of a note executed by the Eckleys in 2010 in the amount of $325,734.  The Eckleys also executed a mortgage securing their repayment obligation with real property located in Rhinelander.  In 2017, Ocwen filed the present foreclosure action, alleging the Eckleys had defaulted on the note by failing to make any payment after May 1, 2013.  Ocwen requested a judgment of foreclosure for "principal, interest, late charges, taxes, insurance, costs, disbursements and attorney fees [in an amount to] be adjudged and determined."

¶3    The Eckleys answered, asserting among other things that Ocwen could not accelerate amounts due under the note because there had been no face-to-face meeting or an attempt to arrange one between the Eckleys and the lender.  The Eckleys later added counterclaims alleging that, for a variety of reasons, Ocwen had used inaccurate or incomplete information to service loans generally, although the counterclaims identified no concrete theories of liability nor allegations specific to the Eckleys' loan.  The counterclaims were ultimately dismissed, and the circuit court granted Ocwen's motion for summary judgment.

The court entered a judgment of foreclosure in the total amount of $423,646.39, with no deficiency judgment. The Eckleys now appeal. Additional facts will be set forth in the discussion section as necessary.

## DISCUSSION

¶4    The Eckleys identify what their reply brief asserts are the "two key issues." First, the Eckleys argue that the note and mortgage were improperly accelerated because Ocwen failed to comply with all of the Department of Veterans Affairs (V.A.) regulations necessary to accelerate the loan. Second, they argue Ocwen failed to make a prima facie case for summary judgment, in that it failed to establish by admissible evidence the entire amount of the $423,646.39 debt. The Eckleys state there are no issues regarding "who owns the Note, the validity of the mortgage and admission of missed payments."

### I. Acceleration of the note and mortgage

¶5    Section 7(B) of the note, under the heading "Default," states:

> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Department of Veterans Affairs in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. This Note does not authorize acceleration when not permitted by V.A. regulations.

The Eckleys argue this provision incorporates the entirety of 38 C.F.R. § 36.4350 (2020),[1] into the loan agreement.[2] That regulation sets forth servicing procedures for holders of loans guaranteed or insured by the V.A.

¶6     This aspect of the Eckleys' argument is undeveloped. The Eckleys assume, without citation to legal authority, that a loan servicer is required to demonstrate compliance with each and every applicable regulation as a condition precedent to commencing and maintaining a foreclosure action.[3] They have cited no Wisconsin authorities on this point, though, and nationally, authorities appear divided on whether to treat compliance with some or all servicing regulations designed to avoid default as a condition precedent to foreclosure (which the servicer must prove) or an affirmative defense (which the mortgagor must prove). *Compare* ***Chrzuszcz v. Wells Fargo Bank, N.A.***, 250 So. 3d 766, 768 (Fla. Dist. Ct. App. 2018) (holding that a "HUD-mandated face-to-face interview (or attempt to interview) was a condition precedent to the foreclosure action," which the bank bore the burden of proving), *with* ***Federal Nat'l Mortg. Ass'n v. Moore***, 609 F. Supp. 194, 196 (N.D. Ill. 1985) ("In Illinois, a mortgagee's failure to comply with the mortgage servicing regulations can be raised in a foreclosure proceeding as an affirmative defense."). Because the Eckleys fail to cite applicable legal

---

[1] All subsequent references to 38 C.F.R. § 36.4350 are to the 2020 version.

[2] Regardless, the loan included an attachment labeled "VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER," which had the effect of amending the terms of the note and mortgage to conform to V.A. regulations.

[3] This conclusion about the nature of the Eckleys' argument necessarily flows from the fact that summary judgment may only be granted if there is a genuine issue of *material* fact. In other words, because the Eckleys assert that a loan servicer can be granted summary judgment only if the record demonstrates full compliance with all applicable servicing regulations, they are necessarily arguing that, at a foreclosure trial, the servicer would have an affirmative burden to demonstrate compliance with all of those regulations.

authority in support of their argument—and, relatedly, because their assertion that compliance with all applicable servicing regulations must be treated as a condition precedent to foreclosure for purposes of Wisconsin law is conclusory and undeveloped—we decline to address this argument. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).[4]

¶7      In any event, we note that the vast majority of regulations to which the Eckleys cite are in the nature of general directives toward loan holders and do not directly establish those holders' duties toward distressed mortgagors or explicitly provide a defense in a foreclosure action.  For example, 38 C.F.R. § 36.4350(a) imposes an obligation upon those who hold V.A. loans to "develop and maintain a loan servicing program which follows accepted industry standards for servicing of similar type conventional loans."  Subsection (b), in the portion cited by the Eckleys, provides that loan holders must "establish procedures to provide loan information to borrowers" and "arrange for individual loan consultations upon request."  Paragraph (g)(2) sets forth a similarly general duty to explain to the V.A. secretary any failures to perform the collection actions specified under (g)(1), including face-to-face meetings with borrowers under appropriate circumstances.  Subsection (d) describes the notice requirements for when a V.A. loan is transferred from one holder to another, and subsection (f)

---

[4] Ocwen argues that because the Eckleys filed a Chapter 7 bankruptcy in 2014 and did not reaffirm the mortgage loan, compliance with any V.A. regulations was not necessary. *See PNC Bank, Nat'l Ass'n v. Wilson*, 74 N.E.3d 100, 107 (Ill. App. 2017) ("The Wilsons' discharge in bankruptcy without reaffirmation means that they are no longer bound by the mortgage contract between the parties and should not be allowed to enjoy any benefits of the mortgage contract that their own volitional act has nullified.").  Because we decide the case on other grounds, we need not address this argument or ascertain the effects of the bankruptcy on the note and mortgage. *See City of Waukesha v. Town Bd. of Town of Waukesha*, 198 Wis. 2d 592, 601, 543 N.W.2d 515 (Ct. App. 1995).  For our purposes, it is sufficient to recognize that the existence of an enforceable debt is undisputed.

describes a number of required components for a loan holder's system of servicing delinquent loans.

¶8 Even assuming one could consider compliance with these general servicing obligations as conditions precedent to foreclosure, the Eckleys err by relying on the testimony of Ocwen senior loan analyst Benjamin Verdooren as proof of any lack of compliance. As the Eckleys readily acknowledge, when asked specifically about the language of the regulations during his deposition, Verdooren variously stated that he was either unfamiliar with the regulations or lacked personal knowledge of whether Ocwen's procedures generally complied with their dictates. The Eckleys overread much of Verdooren's testimony in asserting that it establishes Ocwen's noncompliance.

¶9 That aside, Ocwen posits that the summary judgment record is lacking on this point not because Verdooren was a poor witness, but because Ocwen lacked notice that the Eckleys intended to raise any issue regarding the V.A. regulations except noncompliance with the face-to-face meeting requirement.[5] Ocwen asserts that the Eckleys never filed a notice of corporate deposition under WIS. STAT. § 804.05(2)(e) (2019-20),[6] requesting that it provide a corporate designee to answer questions regarding compliance efforts with *all* V.A. regulations. According to Ocwen, Verdooren was made available for deposition to answer questions regarding his affidavit made in support of Ocwen's summary

---

[5] The Eckleys' responsive pleading specifically mentioned only noncompliance with the face-to-face meeting requirement as a bar to foreclosure, although they did also assert generally that "the terms of the documents and regulations of the Veterans Administration ('V.A.')" apply before citing the face-to-face meeting as being among those applicable regulations.

[6] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

judgment motion. The Eckleys noticeably fail to respond to any of these procedural assertions. In short, the Eckleys have not created a record in opposition to Ocwen's motion for summary judgment that sufficiently creates a genuine issue of material fact regarding compliance with the servicing regulations the Eckleys cite.

¶10 As for the Eckleys' assertions regarding the lack of a face-to-face meeting, the summary judgment record undisputedly shows Ocwen was not deficient in this regard. Under 38 C.F.R. § 36.4350(g)(1), loan holders must "employ collection techniques which provide flexibility to adapt to the individual needs and circumstances of each borrower," including several mandatory procedures. Subsection (g)(1)(iii) mandates that a face-to-face meeting (or reasonable efforts to arrange one) is required only "[i]n the event the holder has not established contact with the borrower(s) and has not determined the financial circumstances of the borrower(s) or established a reason for the default or obtained agreement to a repayment plan from the borrower(s)."

¶11 Here, the summary judgment record undisputedly establishes contact and a determination of the Eckleys' financial circumstances. Ocwen repeatedly sent default notices to the Eckleys in the months after their last payment. In September 2013, the Eckleys responded to Ocwen with a completed financial analysis form, which included affidavits identifying the hardship resulting in the failure to make payments as "unemployment" and a "reduction in income." In addition to providing general information on the form, the Eckleys described their income, expenses and assets. Following their request for loan modification, the Eckleys were assigned an Ocwen "relationship manager," with whom the Eckleys corresponded and provided further information about their finances. In their

affidavits, the Eckleys did not deny that they had "contact" with Ocwen. Rather, they complained that Ocwen had not arranged a face-to-face meeting with them.

¶12    Additionally, the Eckleys complained that Ocwen's ascertainment of their financial circumstances was incomplete because Ocwen was unaware those circumstances "included a father-in-law who could pay down the loan." Indeed, the Eckleys filed an affidavit from John Wiechmann, who averred that, had he been part of a face-to-face meeting with Ocwen, he would have offered to pay down the loan to make the Eckleys' payments more affordable. However, the Eckleys identified no income from relatives on their financial disclosure form (or, apparently, in any other manner). Moreover, the information requested on the form was sufficient under 38 C.F.R. § 36.4350(g)(1)(iii) to allow Ocwen to make a determination of the Eckleys' financial circumstances. The summary judgment record establishes both that Ocwen established contact with the Eckleys and that it ascertained their financial circumstances, obviating the need for a face-to-face meeting under that regulation.

## II. Sufficiency of Ocwen's summary judgment submissions

¶13    We review a grant of summary judgment de novo. *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425. Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). The summary judgment methodology is well established, and we need not restate it here. *See Chapman*, 351 Wis. 2d 123, ¶2.

¶14   The Eckleys appear to argue that because the note was assigned several times and Ocwen did not submit evidence regarding what entity owned the note at particular times, there is insufficient proof to establish the amounts due.  In their brief-in-chief, the Eckleys contend Verdooren lacked personal knowledge of the Eckleys' payment histories with other servicers, and therefore he could not establish the amount the Eckleys owed.  In their reply brief, however, the Eckleys state that they raise no issue regarding the amount of the missed payments, but, rather, they focus on the award of "other costs and fees" in the judgment.[7]

¶15   As a general matter, the Eckleys' assertions that the records here lack general evidentiary value are unpersuasive.  The Eckleys rely on *Palisades Collection LLC v. Kalal*, 2010 WI App 38, 324 Wis. 2d 180, 781 N.W.2d 503, which concerned the requirement that affidavits made in support of, and in opposition to, summary judgment be made on personal knowledge and set forth such facts as would be admissible in evidence. *Id.*, ¶10; *see also* WIS. STAT. § 802.08(3).

¶16   In *Palisades*, a collection company filed an affidavit in support of its summary judgment motion, in which the company's employee averred that the account records attached to the affidavit were true and correct copies of the account holder's credit card statements.  *Palisades*, 324 Wis. 2d 180, ¶4.  We concluded that the affidavit was not sufficient to establish a prima facie case for summary judgment because the affiant was not qualified to testify as to the

---

[7] To the extent we do not address certain arguments the Eckleys raise regarding the amounts contained in the mortgage servicing records, we deem these arguments undeveloped as lacking context or specific assertions about what particular amounts contained in the foreclosure judgment they are challenging. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

account records at issue. *Id.*, ¶1. We reasoned that the account records at issue were generated by a bank, not by the collections company, and that they were therefore not admissible under the business records hearsay exception. *Id.*

¶17 Thereafter, in *Deutsche Bank National Trust Co. v. Olson*, 2016 WI App 14, 366 Wis. 2d 720, 875 N.W.2d 649 (2015), an employee of Deutsche Bank's mortgage loan servicer—Select Portfolio Servicing (SPS)—testified at trial regarding the amount due and owing under a note issued to Olson. *Id.*, ¶¶2-16. This testimony included the SPS employee's acknowledgment that her analysis of the loan history was based on her review of the records generated by a prior loan servicer that were onboarded into SPS's records. *Id.*, ¶14. On appeal, Olson argued that the evidence of the prior loan servicer's records was inadmissible under *Palisades*. *Olson*, 366 Wis. 2d 720, ¶23.

¶18 We rejected Olson's argument and concluded that "third-party records can fall within the business records exception where the party offering the records for admission into evidence establishes that the third-party's records are integrated into that party's business records and that that party relies upon those records." *Id.*, ¶37. In reaching our conclusion, we noted that "*Palisades* stands for the extremely narrow proposition that the hearsay exception for business records is not established when the only affiant concerning the records in question lacks personal knowledge of how the records were made." *Olson*, 366 Wis. 2d 720, ¶41 (citation omitted).

¶19 Here, Ocwen provided—via the Verdooren affidavit—an explanation, based upon Verdooren's personal knowledge, of the process Ocwen used when onboarding the records of prior loan servicers in relation to the Eckleys' mortgage. Verdooren averred that the "onboarding" process takes place

in several steps beginning with "preboarding"—the transfer of the borrower's name and information from the prior servicer to Ocwen's computer system. The actual "boarding" process then begins, in which data concerning the loan's status including servicing history and related records are electronically transferred from the prior servicer to Ocwen, and those data are checked for errors via a computerized process. After the loan information is boarded into Ocwen's system, the prior servicer informs the borrower of the transfer of servicing to Ocwen (the "goodbye" letter), and Ocwen sends correspondence informing the borrower that it will be servicing the loan (the "hello" letter). Verdooren averred that Ocwen relies on and adopts the records of prior servicers as setting forth the records concerning the borrower's loan. Verdooren further averred that he had confirmed that the amounts due on the Eckleys' loan were the amounts contained in Ocwen's computerized servicing data.

¶20 In the Eckleys' reply brief, they argue that *Olson* is materially distinguishable because it did not involve review of a summary judgment decision. This argument is unavailing. If a party challenges the admissibility of evidence another party relies upon in support of its summary judgment submissions, then the circuit court must determine whether the evidence would be admissible at trial. *Palisades*, 324 Wis. 2d 180, ¶10. Here, the circuit court properly determined that the records were admissible under *Olson*. Accordingly, the court could rely on the unrebutted contents of those records to establish Ocwen's entitlement to a summary judgment of foreclosure.

¶21 Similarly, the Eckleys' assertion that Ocwen failed to "undisputedly prove" its entitlement to the costs and fees in the judgment is, with one exception, based on a misunderstanding of the summary judgment procedure. "[E]videntiary facts stated in the affidavits are to be taken as true if not contradicted by other

opposing affidavits or proof." *Leszczynski v. Surges*, 30 Wis. 2d 534, 539, 141 N.W.2d 261 (1966). Upon Ocwen's establishing a prima facie case for its entitlement to reimbursement of costs and fees, it was incumbent upon the Eckleys to submit evidentiary materials sufficient to create a genuine issue of material fact to avoid summary judgment. For such items that they did not challenge with their own evidentiary submissions, the circuit court properly treated those items as undisputed for purposes of summary judgment.

¶22 The Eckleys primarily challenge the judgment's award of $19,240.72 for "Prior Attorney Fees/Costs." Ocwen contends these consist of "prior servicers' fees," but it fails to provide a record citation to support this proposition. Ocwen also fails to identify the basis for these fees as an item of recoverable damages under the note and mortgage; it merely claims that they came from an unidentified prior servicer's platform and are therefore valid. But, as the Eckleys note, Verdooren was asked at his deposition what those fees were for, and he could not provide an answer. Given Ocwen's failure to demonstrate the validity of the prior servicing fees under the note and mortgage, we conclude there is no admissible evidence that would support an award for this item of damages, and we therefore reverse that portion of the judgment.

¶23 The Eckleys also challenge the judgment's award of escrow advances in the amount of $19,840.20, but apparently only to the extent that the

award includes reimbursement for insurance expenses in the amount of $3,626.[8] The mortgage required the Eckleys to maintain sufficient hazard coverage on the mortgaged premises during the loan period, and it is undisputed they have not paid for insurance coverage since 2013. Although Verdooren testified at his deposition that he had not personally viewed the insurance documents for the Eckleys' loan, his averment that the amount included in his affidavit was reflected in Ocwen's servicing records suffices for purposes of summary judgment, as explained above.

¶24    The Eckleys further challenge a $295 title search expense, as well as expenses for a property inspection. As Ocwen notes, the mortgage allows the loan holder to charge the borrower fees for "services performed in connection with" any default for the purposes of protecting its security interest, including "attorneys' fees, property inspection and valuation fees." Reimbursement of the property inspection fee is therefore clearly authorized by this provision. Although the title search fee is not so specifically authorized, Ocwen contends—as supported by its citation to an internet reference source—that a title search is typically conducted in preparation for a foreclosure for purposes of identifying other encumbrances and parties that may need to be joined. Because the Eckleys fail to offer any argument casting doubt on Ocwen's assertion, we deem it conceded that the title search fees identified by Verdooren were costs or expenses

---

[8] This appears to be the amount Ocwen represented that it had paid for insurance between 2016 and 2018. The Eckleys challenge other amounts paid from the escrow account, but only on the basis that Verdooren lacked knowledge about whether those amounts were used specifically to pay for insurance or taxes. It is undisputed the mortgage required the Eckleys to maintain insurance and pay the property taxes, and that they failed to do so since 2013. As a result, we reject the Eckleys' assertion that Verdooren's inability to testify at deposition about whether a particular payment from the escrow account was for insurance or taxes renders Ocwen's proof insufficient, where Verdooren was testifying only about the content of the servicing records and he testified that each payment was for one of the two recoverable expenses.

incurred in enforcing the note and mortgage. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). The property inspection and title search fees were therefore properly made part of the foreclosure judgment.

¶25 In sum, we agree with the circuit court that a summary judgment of foreclosure was appropriate, insofar as the record undisputedly establishes the Eckleys' default on the note and mortgage. There was sufficient evidence set forth in the Verdooren affidavit and accompanying loan servicing records to establish the amount of the judgment, except to the extent that the judgment incorporated $19,240.72 for "Prior Attorney Fees/Costs." We reverse that portion of the judgment and remand to the circuit court for further proceedings consistent with this opinion, but we affirm the judgment in all other respects.

¶26 No WIS. STAT. RULE 809.25(1) costs are awarded to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.